107 T.C. No. 13

UNITED STATES TAX COURT

ESTATE OF BESSIE I. MUELLER, DECEASED,
JOHN S. MUELLER, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2733-90.                    Filed November 5, 1996.

R determined a deficiency in P's estate tax
liability.  P claims that it is entitled to equitable
recoupment of previously paid income tax, the refund of
which is barred by the statute of limitations.  In
<u>Estate of Mueller v. Commissioner</u>, 101 T.C. 551 (1993),
we held that we have jurisdiction to consider claims of
equitable recoupment.

As a result of our valuation of stock includable
in the estate, see <u>Estate of Mueller v. Commissioner</u>,
T.C. Memo. 1992-284, it is now apparent that there is
no deficiency in estate tax; rather, P is entitled to
recover an overpayment of estate tax, regardless of
equitable recoupment.  Under these circumstances, any
application of equitable recoupment would increase the
amount that P is entitled to recover as an overpayment.

Held: Equitable recoupment is restricted to use as a defense against an otherwise valid claim. For purposes of equitable recoupment, the notice of deficiency is considered to be R's claim for additional estate tax. See Bull v. United States, 295 U.S. 247 (1935). Once it is determined that R has no valid claim for additional tax, the defense of equitable recoupment has no application. Equitable recoupment cannot be used to increase the amount of an overpayment that P is entitled to recover.

Stevan Uzelac, Michael A. Indenbaum, and Paul L. Winter, for petitioner.

Thomas M. Rath and Trevor T. Wetherington, for respondent.

OPINION

RUWE, Judge:[*] Respondent determined a deficiency of $1,985,624 in petitioner's Federal estate tax. Respondent's deficiency determination was primarily based on her assertion that the date-of-death value of shares of stock in the Mueller Co. was $2,150 per share, as opposed to $1,505 per share as reported on the estate tax return. The amount of the deficiency determined by respondent was the result of this increase in value and other adjustments not in issue, including respondent's allowance of a credit for tax on prior transfers in the amount of $1,152,649, that had not been claimed by petitioner on its estate

---

[*]This case was reassigned to Judge Robert P. Ruwe by order of the Chief Judge.

tax return.  Petitioner petitioned this Court for a redetermination.[1]

Petitioner subsequently filed an amended petition alleging that "The Commissioner erred in determining said Deficiency by disallowing recoupment against such [estate] tax amount for the income tax paid by the Bessie I. Mueller Trust * * * on capital gains realized from the post-death sale of * * * Mueller Company common stock includable in the Decedent's gross estate."  The Bessie I. Mueller Administration Trust (the Trust) is the residuary legatee of decedent's estate.  After decedent's death, the Trust sold shares of Mueller Co. stock that were included in decedent's gross estate.  On its income tax return, the Trust reported gain on the sale using a basis of $1,500 per share.[2]

---

[1]Decedent Bessie I. Mueller resided and was domiciled in Port Huron, Michigan, at the time of her death, and her will was admitted to probate by the Probate Court of St. Clair County, Michigan.  John S. Mueller, the personal representative in this case of decedent's estate and one of the two trustees of the Administration Trust, was a resident of Naples, Florida, when he filed the petition in this case.  The estate's other personal representative and the other trustee of the Administration Trust is Milton W. Bush, Sr., an attorney who resides in Port Huron, Michigan.  The Michigan National Bank, which was engaged by the two trustees as their agent upon the death of decedent, has its principal corporate office in Michigan.  Throughout the time relevant to this case, the Administration Trust has been administered in Michigan.

[2]The record does not explain why the Trust used a basis that was $5 per share less than the amount petitioner reported as the fair market value of the shares in the estate tax return.

The Trust's basis in the stock is controlled by the value of the stock at decedent's date of death. See sec. 1014(a)(1).[3]

In Estate of Mueller v. Commissioner, T.C. Memo. 1992-284 (Mueller I), we found that the date-of-death value of the Mueller Co. stock was $1,700 per share, as opposed to $1,505 per share as reported on petitioner's estate tax return or $2,150 as determined by respondent in the notice of deficiency. As a result, it is now clear that the Trust understated its basis and overstated its gain on the sale of Mueller Co. stock and, therefore, overpaid its income tax. However, the statute of limitations bars refund of the Trust's overpayment of income tax.

Respondent moved to dismiss petitioner's claim for recoupment on the ground that we lacked jurisdiction to consider equitable recoupment. In Estate of Mueller v. Commissioner, 101 T.C. 551 (1993) (Mueller II), we held that this Court is authorized to entertain the affirmative defense of equitable recoupment in an action for redetermination of a deficiency and denied respondent's jurisdictional motion. Id. at 561. However, we made no findings with respect to whether petitioner satisfied the requirements for applying equitable recoupment in this case.

It subsequently became clear that our opinion in Mueller I, which increased decedent's taxable estate by less than the amount

_____

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

determined in the notice of deficiency, combined with respondent's allowance in the notice of deficiency of the credit for tax on prior transfers, will result in a decision that there is <u>no</u> deficiency in petitioner's estate tax.[4]  Indeed, petitioner is entitled to recover an overpayment of its estate tax, regardless of whether or not equitable recoupment applies in this case.[5]

The threshold issue we must address is whether petitioner may use equitable recoupment against respondent, where respondent has no valid claim for additional estate tax against which petitioner needs to defend.

Pursuant to the doctrine of equitable recoupment, "a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." <u>United States v. Dalm</u>, 494 U.S. 596, 608 (1990).  Equitable recoupment can be used as a <u>defense</u> by both taxpayers and the Government.  <u>Stone v. White</u>, 301 U.S. 532 (1937).  While recoupment claims are generally not barred by the statute of

---

[4]This credit, which was not claimed on decedent's estate tax return, was for property received by decedent from the estate of her stepson Robert E. Mueller.  Allowance of this previously unclaimed credit was appropriate in determining the amount of the deficiency.  See sec. 6211.

[5]Both parties agree that there is no estate tax deficiency and that petitioner is entitled to a decision that it has overpaid its estate tax, regardless of any effect that the doctrine of equitable recoupment might have.

limitations if the main action is timely, use of recoupment based on an otherwise time-barred claim is limited to <u>defending</u> against the claim in the main action.[6]  <u>Reiter v. Cooper</u>, 507 U.S. 258, 264 (1993); <u>United States v. Dalm</u>, <u>supra</u> at 605; <u>Stone v. White</u>, <u>supra</u> at 538-539; <u>Bull v. United States</u>, 295 U.S. 247, 262-263 (1935); <u>United States v. Forma</u>, 42 F.3d 759, 765 (2d Cir. 1994);[7] <u>In re Greenstreet, Inc.</u>, 209 F.2d 660, 663 (7th Cir. 1954).[8]

---

[6]The term "main action" is used to denote the timely claim as opposed to the time-barred claim upon which the recoupment defense is based.  See <u>Reiter v. Cooper</u>, 507 U.S. 258, 264 (1993); <u>United States v. Dalm</u>, 494 U.S. 596, 605 (1990); <u>Stone v. White</u>, 301 U.S. 532, 539 (1937); <u>Bull v. United States</u>, 295 U.S. 247, 262 (1935); <u>United States v. Forma</u>, 42 F.3d 759, 765 (2d Cir. 1994).

[7]After reviewing cases involving recoupment, the Court of Appeals for the Second Circuit stated:

> All of these cases conclude that "a party sued by the United States may recoup damages * * * so as to reduce or defeat the government's claim * * * though no affirmative judgment * * * can be rendered against the United States."  <u>In re Greenstreet</u>, 209 F.2d at 663. [<u>United States v. Forma</u>, <u>supra</u> at 765.]

[8]With respect to the limited defensive nature of recoupment, the Court of Appeals for the Seventh Circuit stated:

> the government concedes that a party sued by the United States may recoup damages arising out of the same transaction, or where authorized, set off other claims, so as to reduce or defeat the government's claim.  That this is a correct conception of the law is apparent from <u>United States v. United States Fidelity & Guaranty Co.</u>, 309 U.S. 506, at page 511 * * *; <u>Bull v. United States</u>, 295 U.S. 247, at page 262 * * *; <u>United States v. Ringgold</u>, 8 Pet. 150, 163-164 * * *, though no affirmative judgment over and above the amount of its

(continued...)

Petitioner acknowledges that equitable recoupment is limited to defensive use.  However, petitioner argues that it should be allowed to use equitable recoupment to defend against the additional tax that would have been due as a result of our valuation of decedent's stock, assuming that respondent had not allowed the credit for prior transfers in the notice of deficiency.  Petitioner would have us apply recoupment against a hypothetical tax liability on a transaction-by-transaction basis, regardless of whether there was a valid claim for additional tax liability against which to defend.  On brief, petitioner describes this as an issue of first impression.

Respondent takes the position that equitable recoupment can be used by a taxpayer only as a defensive measure to reduce or eliminate a taxpayer's actual liability for additional tax. Respondent argues that once it is clear that the taxpayer has no additional tax liability, there is no valid claim against which to defend.  Respondent contends that to allow equitable recoupment of time-barred taxes to increase the overpayment that is already due petitioner is the same as permitting petitioner affirmatively to collect the time-barred overpayment of tax.

Respondent's position finds support in Mueller II where we stated:

---

[8](...continued)
claim can be rendered against the United States, United States v. Shaw, 309 U.S. 495 * * *  [In re Greenstreet, Inc., 209 F.2d 660, 663 (7th Cir. 1954).]

the party asserting equitable recoupment may not affirmatively collect the time-barred underpayment or overpayment of tax. Equitable recoupment "operates only to reduce a taxpayer's timely claim for a refund or to reduce the government's timely claim of deficiency". O'Brien v. United States, 766 F.2d 1038, 1049 (7th Cir. 1985). [Estate of Mueller v. Commissioner, 101 T.C. at 552.]

The opinion in O'Brien v. United States, 766 F.2d 1038, 1049 (7th Cir. 1985), also supports respondent's position that equitable recoupment may be used only as a defense against the additional tax that would otherwise be due:

> Recoupment * * * will permit a taxpayer to recoup an erroneously paid tax, the refund of which is time-barred, against a timely and correctly asserted deficiency by the government. The doctrine thus operates only to reduce * * * the government's timely claim of deficiency; it does not allow the collection of the barred tax itself. In summary, the doctrine requires some validly asserted deficiency or refund against which the asserting party desires to recoup a time-barred refund or deficiency.
>
> *     *     *     *     *     *     *
>
> Attempts by taxpayers to utilize the doctrine to revive an untimely affirmative refund claim, as opposed to offset a timely government claim of deficiency with a barred claim of the taxpayer, have been uniformly rejected. * * * [Id. at 1049; citation omitted.]

Likewise, in Brigham v. United States, 200 Ct. Cl. 68, 80-81, 470 F.2d 571, 577 (1972), the court explained the function of equitable recoupment as follows:

> When its benefits are sought by the taxpayer, the function of the doctrine is to allow the taxpayer to

> reduce the amount of a deficiency recoverable by the Government by the amount of an otherwise barred overpayment of the taxpayer. * * *

Petitioner correctly points out that none of these cases, nor any others relied upon by respondent, specifically address the situation that confronts us; i.e., whether equitable recoupment applies where, in the main action, the Court finds that there is an increase in a taxable item, but because of another adjustment in the main action, which is in the taxpayer's favor (the allowance of the credit for prior transfers), there is no additional tax owed to the Government. Further examination of the origin and nature of equitable recoupment is, therefore, appropriate.

The doctrine of equitable recoupment in tax cases was first articulated in Bull v. United States, supra. The Commissioner had determined a deficiency in estate tax, which the estate paid. Thereafter, the Commissioner inconsistently determined that there was a deficiency in the income tax liability of the estate based on the same item. The taxpayer paid the income tax deficiency and brought suit for refund. It was ultimately determined that the additional income tax liability, as determined by the Commissioner, was correct, but that the additional estate tax liability determined by the Commissioner based on the same item, was incorrect. The problem was that the additional estate tax

had already been paid, and the statute of limitations barred any refund of the estate tax.

While no refund action could be brought for recovery of the estate tax, the Supreme Court recognized that if the taxpayer had been <u>defending</u> against a lawsuit by the Government for the additional income tax, the taxpayer would have been permitted, by the doctrine of recoupment,[9] to raise time-barred claims arising out of the same transaction as a <u>defense</u> to the Government's suit.  But the taxpayer had filed the refund suit and was the plaintiff.  The Government had already collected the disputed income tax and was seeking no further relief against which the taxpayer had to defend.  The Supreme Court, nevertheless, recognized that it was the Government that had initiated the controversy by making its income tax deficiency determination and that the taxpayer, although technically the plaintiff, was, in reality, defending against the Government's determination.[10]  The Supreme Court therefore fashioned the doctrine of equitable recoupment to allow the taxpayer to defend against the

_____

[9]Recoupment has been described as "the setting off against asserted liability of a counterclaim arising out of the same transaction.  Recoupment claims are generally not barred by a statute of limitations so long as the main action is timely." <u>Reiter v. Cooper</u>, 507 U.S. at 264.

[10]See <u>United States v. Dalm</u>, 494 U.S. at 605, stating that in <u>Bull v. United States</u>, <u>supra</u>, "the proceeding between the executor and the Government was in substance an attempt by the Government to recover a debt from the estate."

Government's claim for additional taxes.  The Supreme Court

explained this as follows:

> If the claim for income tax deficiency had been the subject of a suit [by the Government], any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained notwithstanding the statute of limitations had barred an independent suit against the Government therefor.  This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.  Such a defense is never barred by the statute of limitations so long as the main action itself is timely.
>
> The circumstance that both claims, the one for estate tax and the other for income tax, were prosecuted to judgment and execution in summary form does not obscure the fact that in substance the proceedings were actions to collect debts alleged to be due the United States.  It is immaterial that in the second case, owing to the summary nature of the remedy, the taxpayer was required to pay the tax and afterwards seek refundment.  This procedural requirement does not obliterate his substantial right to rely on his cross-demand for credit of the amount which if the United States had sued him for income tax he could have recouped against his liability on that score.  [Bull v. United States, 295 U.S. at 262-263; fn. ref. omitted.]

In Bull v. United States, supra, and United States v. Dalm,

494 U.S. at 602-605, the Supreme Court made it clear that the

purpose of "equitable recoupment" was to replicate the role that

"recoupment" would have played had the Government actually

brought suit to collect the additional tax.  It is instructive

then to look at how recoupment would have applied if the

Government had brought suit to collect the additional estate tax

liability that it claimed as a deficiency in the instant case.

The Government would have brought suit in the District Court against the taxpayer for the amount of additional estate tax that it claimed--$1,985,624. Assuming that the District Court found a $1,700 per share value for the stock, as opposed to the $2,150 alleged by the Government, there would be a judgment that the taxpayer owed no tax debt to the Government.[11] As a result, the Government would totally lose its claim as plaintiff. Once the Government's claim for additional tax was shown to be meritless, the purely defensive use of recoupment would not be available to allow the taxpayer to recover any portion of the time-barred overpayment of income tax. To allow recoupment in this situation would go beyond its exclusively defensive nature and beyond the District Court's jurisdiction.[12]

In the instant case, as in Bull v. United States, supra, the Government's claim for additional tax is embodied in its deficiency determination. However, as previously explained, when the stock is valued at $1,700 per share, there is no additional tax due. As a result, the Government does not have a valid claim

---

[11]The combination of increasing the taxable estate and allowing the credit for prior transfers would produce the same result that we arrive at here--petitioner has no additional estate tax liability; rather, petitioner has overpaid its estate tax and would be entitled to a refund.

[12]No suit or counterclaim can be brought against the United States where the subject of the suit or counterclaim is barred by the statute of limitations. This bar is jurisdictional in nature. A narrow exception is the availability of recoupment as a defense against an action brought by the United States. United States v. Dalm, supra at 608.

for a tax debt, and there is no liability against which equitable recoupment can be used to defend.[13]

In Stone v. White, 301 U.S. 532 (1937), the Supreme Court allowed the Government to use equitable recoupment to defend against an income tax refund suit brought by a trustee. The Court ultimately held that the trustee had overpaid income tax and that the income in issue should have been taxed to the trust's beneficiary. However, the statute of limitations barred assessment against the beneficiary. The tax on the beneficiary would have exceeded the amount of tax paid by the trust. The Government raised the equitable recoupment defense. The trust argued that the statute of limitations barred assessment against the beneficiary and that the beneficiary's tax should not be considered. The Supreme Court allowed the equitable recoupment defense, stating:

---

[13]Equitable recoupment has been restricted to defending against an otherwise valid claim or cause of action. The Government's claim or cause of action here is its assertion that petitioner is liable for additional estate tax. "In federal tax litigation one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation." Finley v. United States, 612 F.2d 166, 170 (5th Cir. 1980)(citing Commissioner v. Sunnen, 333 U.S. 591, 598 (1948)). The same reasoning applies to the estate tax. There is no distinction conceptually between the nature of a cause of action arising from estate taxes on the one hand and one arising from a single year's income tax on the other. Estate of Hunt v. United States, 309 F.2d 146, 148 (5th Cir. 1962); see also Huddleston v. Commissioner, 100 T.C. 17, 25 (1993).

The statutory bar to the right of action for the collection of the tax does not prevent reliance upon a defense which is not a set-off or a counterclaim, but is an equitable reason, growing out of the circumstances of the erroneous payment, why petitioners ought not to recover.

Here the defense is not a counter demand on petitioners, but a denial of their equitable right to undo a payment which, though effected by an erroneous procedure, has resulted in no unjust enrichment to the government, and in no injury to petitioners or their beneficiary. The government, by retaining the tax paid by the trustees, is not reviving a stale claim. Its defense, which inheres in the cause of action, is comparable to an equitable recoupment or diminution of petitioners' right to recover. "Such a defense is never barred by the statute of limitations so long as the main action itself is timely." Bull v. United States, 295 U.S. 247, 262 * * *  [Id. at 538-539.]

Even though the uncollected tax from the time-barred year exceeded the tax in the main action before the Court, the Government did not affirmatively recover the excess. To have done so would have allowed equitable recoupment to be used for more than defensive purposes.

In Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 301-303 (1946), the Supreme Court indicated that it was unwilling to expand the doctrine of equitable recoupment beyond its established parameters, because to have done so would have infringed upon the statute of limitations.[14]  Petitioner's

---

[14]In Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 301 (1946), the Supreme Court stressed the importance of a statute of limitations, stating:

(continued...)

position would also infringe upon the statute of limitations by allowing petitioner affirmatively to recover time-barred overpayments. Nevertheless, petitioner asks us to expand the application of equitable recoupment beyond what any court has ever done. In the final analysis, we agree with the following observation of the Court of Claims:

> If the doctrine of recoupment were a flexible one, susceptible of expansion, it might well be applied in the instant case. But the teaching of Rothensies is that it is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason. [Ford v. United States, 149 Ct. Cl. 558, 569, 276 F.2d 17, 23 (1960).]

---

[14](...continued)

It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

We have had recent occasion to point out the reason and the character of such limitation statutes. "Statutes of limitation * * * are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 348-9. * * *

Use of equitable recoupment is limited to defending against a valid claim. It allows an otherwise time-barred tax claim arising out of the same transaction to be used as a defense or credit against any additional tax ultimately found to exist in the main action.[15] If all or part of the Government's claim for additional tax is sustained, equitable recoupment can be used to reduce or eliminate it. However, once equitable recoupment of the time-barred tax overpayment completely eliminates the additional tax liability in the main action, equitable recoupment has served its restricted defensive purpose.[16] Equitable recoupment cannot be used affirmatively to recover a tax overpayment, the refund of which is barred by the statute of limitations.

Where the Government claims that the taxpayer owes additional tax and the court finds that there is no additional tax due to the Government, there is nothing left to <u>defend</u> against.[17] The additional estate tax liability that would have

---

[15]See <u>United States v. Dalm</u>, 494 U.S. at 605.

[16]See <u>United States v. Timber Access Indus. Co.</u>, 54 F.R.D. 36 (D. Or. 1971). The defendant was entitled to an affirmative recovery against the Government on a separate <u>counterclaim</u>; however, <u>recoupment</u> against the Government was restricted to the amount that the Government was entitled to recover in the main cause of action initiated by the Government.

[17]See <u>Evans Trust v. United States</u>, 199 Ct. Cl. 98, 106, 462 F.2d 521, 526 (1972), stating:

(continued...)

resulted from our valuation of the stock in decedent's estate was less than the credit that respondent correctly allowed in the notice of deficiency. As a result, respondent has no valid claim for additional tax. Respondent's claim for additional tax has been totally defeated, and petitioner is entitled to a decision that there is no deficiency and that it overpaid its estate tax. Any use of equitable recoupment at this point would not be defensive.

We hold that petitioner is not entitled to use equitable recoupment affirmatively to increase the amount of an overpayment it is entitled to recover. It follows that equitable recoupment has no application in this case. As a result of our disposition, we express no opinion regarding whether any of the other requirements for equitable recoupment have been satisfied.

<u>An appropriate order will be issued</u>.

Reviewed by the Court.

COHEN, CHABOT, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WHALEN, CHIECHI, FOLEY, and VASQUEZ, <u>JJ</u>., agree with this majority opinion.

---

[17](...continued)
Furthermore, since the Government's asserted deficiency was settled by a determination that no deficiency existed, plaintiff is attempting to use recoupment not in its traditional form as a defense to an asserted deficiency, but as an independent ground for reopening years now closed by the statute of limitations.

CHABOT, J., concurring:  I join in the majority opinion and the interpretation that the "claim" in the instant case, against which equitable recoupment is sought to lie, is respondent's claim that there is a deficiency in estate tax.

The dissenters maintain that the claim against which equitable recoupment is sought to lie is only respondent's claim that, because of the revaluation of the Mueller Co. stock, the estate tax liability is greater than it otherwise would be. Judge Beghe's dissenting opinion, infra pp. 77-81, relies on Hemmings v. Commissioner, 104 T.C. 221 (1995), for the proposition "that the credit for previously paid taxes is not part of the same claim or cause of action as that attributable to the date of death value of the shares."  Dissenting op. p. 79 (Beghe, J.).  However, as explained in Hemmings v. Commissioner, 104 T.C. at 233-235, it appears that the only situation where the issues of the unclaimed credit and the stock value could be litigated in separate actions would be where the taxpayer first proceeds in a refund forum on one of the issues and the Commissioner then raises the other issue in a later notice of deficiency.  Also, with exceptions not relevant in the instant case, in deficiency proceedings in the Tax Court, the different issues are merged into a single cause of action and neither side is permitted to bring a separate suit "in any court" once a decision on liability for "estate tax in respect of the taxable

estate of the same decedent" has become final.  Sec. 6512(a);
<u>Hemmings v. Commissioner</u>, 104 T.C. at 226, 232-233.  Indeed, even
in the other forums, the taxpayer apparently is barred from
bringing a second suit for the same tax even if that second suit
is based on a different issue.  <u>Hemmings v. Commissioner</u>, 104
T.C. at 233-234.  Thus, <u>Hemmings</u> does not support the dissent's
contentions as to what is respondent's claim in the instant case,
against which equitable recoupment is sought to lie.

Because the majority opinion's analysis, in combination with
Mueller I, appears to dispose of the instant case, failure to
respond to the other considerations dealt with in Judge Beghe's
dissent, is not to be taken as acceptance of, or disagreement
with, the views Judge Beghe expresses as to the many hurdles
petitioner must overcome in order to succeed in the highly
technical realm of equitable recoupment.

COHEN, PARR, and RUWE, <u>JJ</u>., agree with this concurring
opinion.

WELLS, J., dissenting: I respectfully disagree with the majority's overly restrictive view of the applicability of the doctrine of equitable recoupment. I agree with Judge Beghe that all of the conditions for application of the doctrine have been met. I, however, want to focus my disagreement on what I believe is the majority's mistaken notion that the application of the doctrine of equitable recoupment in the instant case is offensive rather than defensive simply because the amount of an unrelated overpayment of tax resulting from the estate's failure to claim a credit for tax on prior transfers exceeds the amount of additional estate tax due by reason of the increased valuation of the shares in issue.

I believe that, once an equitable recoupment claim is properly raised by a taxpayer in defense of an asserted deficiency, the mere fact that the Commissioner's partial victory fails to produce a deficiency should not prevent the Court from allowing the equitable recoupment claim. If respondent had been totally sustained on the deficiency, or even if the increase in the valuation of the shares of stock in issue had been great enough to create an overall deficiency in estate tax, I think the majority would concede (assuming that they would agree that the other requirements are met) that the recoupment claimed would be allowed. The application of the doctrine should be governed solely by matters relating to the shares, and not upon the fortuity of unrelated circumstances, i.e. the convergence of (1)

respondent's concession in the notice of deficiency of the credit for tax on prior transfers that petitioner had failed to claim on the estate tax return with (2) the valuation of the shares at an amount that resulted in an overpayment rather than a deficiency.

The relevant circumstances may be briefly summarized. For estate tax purposes, the estate valued the shares in issue at $1,505 each. Shortly after decedent's death, the Administration Trust sold those shares for $2,150 each, computing the gain realized on the sale using a basis of $1,500 per share, which was approximately the value claimed for estate tax purposes. Respondent determined that each share was worth $2,150. In Estate of Mueller v. Commissioner, T.C. Memo. 1992-284, we found the value of each share to be $1,700 for estate tax purposes. Accordingly, the estate underpaid its estate tax by $957,099 as a result of the undervaluation. However, because the Trust used $1,500 as the basis of the shares to compute the gain on the sale, the Trust paid $265,999 more in income tax on the sale of the shares than it would have if the proper basis of $1,700 per share had been used. The period of limitations for claiming a refund of that overpayment of income tax had expired. In the notice, respondent allowed the estate a $1,152,649 credit for tax on prior transfers to which it was entitled but had not claimed on its estate tax return. The credit was completely unrelated to the issue of the valuation of the shares. If we had sustained respondent's valuation of the shares, a deficiency would have

been due from the estate even considering the overpayment attributable to the allowance of the credit. As it turned out, the additional estate tax attributable to the revaluation of the shares was less than the overpayment resulting from the estate's failure to claim the credit on its return, and the estate is therefore due a refund.

Petitioner argues that it should be allowed to recoup against the additional estate tax attributable to the revaluation of the shares ($957,099) the amount of income tax overpaid on their sale ($265,999). The majority would allow equitable recoupment only if there were an overall deficiency in tax after taking into account all issues in the case (other than the equitable recoupment claim). I agree with Judge Beghe that the recoupment claim should be allowed so long as it did not exceed the additional tax due as a result of the increased valuation of the shares; i.e. recoupment should be applied to correct the error on a transactional basis, not just on the basis of whether some amount is finally determined to be owed to the party who received the windfall.

Recoupment has been characterized as a counterclaim or defense against asserted liability relating to the same transaction, item, or event upon which the main action is grounded. Reiter v. Cooper, 507 U.S. 258, 264 (1993); United States v. Dalm, 494 U.S. 596, 605 n.5, 608 (1990); Bull v. United States, 295 U.S. 247, 262 (1935). The doctrine is designed to

prevent unjust enrichment of either the taxpayer or the Government. Stone v. White, 301 U.S. 532, 537-539 (1937); Bull v. United States, supra at 260-261. While admittedly no case has squarely considered the issue presented by the instant case, recoupment has always been applied on an item-by-item or transaction-by-transaction basis, and the circumstances surrounding unrelated items or transactions have not been deemed relevant to the application of the doctrine. Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299 (1946) (recoupment "has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole" (emphasis supplied)). Consequently, I believe the majority's limitation on the application of the doctrine is inconsistent with its nature and the policy underlying it. As there is no issue as to the entitlement to the credit, the "main action" in the instant case is not the entire liability of the estate for tax, but rather the additional estate tax claimed with respect to the shares.

I believe that the majority overstates its case regarding the defensive use of equitable recoupment, in that the cases relied on by the majority do not go as far as the majority would have them go. The rejection of equitable recoupment as an offensive weapon by the Supreme Court in United States v. Dalm,

supra, does not require the result reached by the majority. If petitioner had paid the full deficiency determined by respondent and sued for a refund, the reach of Dalm would not have precluded the right of petitioner to obtain a refund of the income tax attributable to the sale of the shares even if the refund forum court had reduced the estate tax valuation of the shares as we have done in the instant case. The only limitation imposed by Dalm would have been to preclude petitioner from increasing the amount of its claimed refund by any amount attributable to the claimed overpayment of income tax. Similarly, Bull v. United States, supra, does not require the result the majority reaches because that case did not involve an unrelated claim for refund, and therefore the majority's hypothetical construction of the Government's claim were it to sue for the deficiency determined mistakenly emphasizes the taxpayer's overall liability as the determinative factor in deciding whether to apply the doctrine.

Accordingly, I would hold that, to the extent that petitioner's recoupment claim does not exceed the amount of the additional tax sought by respondent with respect to the shares of stock, the use of the doctrine is purely defensive and does not enable petitioner to affirmatively recover on a time-barred claim. I therefore respectfully dissent.

COLVIN, BEGHE, and GALE, JJ., agree with this dissent.

HALPERN, J. dissenting:  I join in section 7, Overpayment Status, of Judge Beghe's separate opinion and dissent for the reasons stated therein.

BEGHE, _J_., dissenting:  I respectfully dissent.  I believe this case satisfies all requirements for equitable recoupment. In particular, petitioner's overpayment posture, which results from a completely unrelated, fortuitous issue, should not prevent recoupment.

The majority has created a new rule about offensive use of equitable recoupment that unnecessarily perpetuates unjust enrichment of the Government, thwarts the fundamental purposes of equitable recoupment, and seems likely to prevent equitable recoupment in other cases where justice may even more clearly require it.

I have no disagreement with the facts recited by the majority opinion; the facts on the recoupment issue were almost completely stipulated by the parties.  However, I provide a supplemental statement of the procedural and factual background, both to aid understanding of the overpayment issue and to lay the foundations for my conclusions on the other issues.  Bearing in mind equitable recoupment's objective of promoting one-stop shopping,[1] I think petitioner is now entitled to see a reasoned opinion charting the path to the destination I would reach.

After summarizing the background, I address all the other issues before dealing, _infra_ pp. 69-97, with the overpayment issue; my rejoinder to the majority opinion begins _infra_ p. 72.

---

[1]_Mueller v. Commissioner_, 101 T.C. 551, 563-564 (1993) (Halpern, J., concurring).

## Contents

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 37

   1. Refund Time-Barred . . . . . . . . . . . . . . . . . . 39
   2. Single Transaction . . . . . . . . . . . . . . . . . . 42
   3. Inconsistent Treatment . . . . . . . . . . . . . . . . 60
   4. Identity of Interest . . . . . . . . . . . . . . . . . 63
   5. Statutory Mitigation . . . . . . . . . . . . . . . . . 65
   6. Other Equitable Considerations . . . . . . . . . . . . 68
   7. Overpayment Status . . . . . . . . . . . . . . . . . . 69
      i.   Code sections are no obstacle
          to recoupment . . . . . . . . . . . . . . . . 71
      ii.  Recoupment's defensive nature and
          the unrelated overpayment don't
          bar recoupment . . . . . . . . . . . . . . . 72
     iii. Barring recoupment would be inconsistent
          with tax precedent . . . . . . . . . . . . . 84
     iv.  Barring recoupment would be inconsistent
          with other precedent . . . . . . . . . . . . 88

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 98

## Background

In <u>Estate of Mueller v. Commissioner</u>, T.C. Memo. 1992-284 (Mueller I), we redetermined the increased value of shares of the Mueller Co. included in the gross estate of Bessie I. Mueller (decedent). In <u>Estate of Mueller v. Commissioner</u>, 101 T.C. 551 (1993) (Mueller II), we held that this Court is authorized to apply equitable recoupment and therefore denied respondent's motion to dismiss for lack of jurisdiction those paragraphs of petitioner's amended petition asserting its right to equitable recoupment. Petitioner's claim for equitable recoupment would reduce the additional estate tax arising from an increase in the estate tax value of the shares by the amount of a time-barred

overpayment of income tax made by the Bessie I. Mueller Administration Trust (the Administration Trust). This income tax overpayment was attributable to the overstated gain the Administration Trust reported on the sale of the shares because it failed to take into account the step-up in basis resulting from respondent's estate tax determination, as modified by our holding in Mueller I, and then failed to file a timely refund claim. It thus remained for us to decide whether to apply equitable recoupment in this case.

When decedent, Bessie I. Mueller, died on March 24, 1986, her gross estate included 8,924 shares of common stock of Mueller Co. (the shares).[2] Petitioner's Federal estate tax return, timely filed on December 23, 1986, reported the date-of-death fair market value of the shares as $13,430,620, or $1,505 per share. The total value of decedent's gross estate reported on the estate tax return was $14,623,510.

By statutory notice of deficiency issued on November 24, 1989, respondent determined that the date-of-death fair market value of the shares was $19,186,600, or $2,150 per share. As a result of this increase in value and other adjustments not in issue, including respondent's allowance of a credit for tax on prior transfers, in the amount of $1,152,649, that had not been

---

[2]See majority op. p.3 note 1 for a summary of the places of residence of decedent and her personal representatives and the trustees of the Administration Trust.

claimed on the Federal estate tax return, respondent determined a deficiency of $1,985,624 in petitioner's Federal estate tax. Petitioner petitioned this Court for a redetermination.

In Mueller I, we found that the date-of-death value of the shares was $15,170,800, or $1,700 per share. Our revaluation, standing alone, would result in an increase in Federal estate tax of $957,099, computed at the top marginal estate tax rate of 55 percent in effect during 1986, prior to allowance of additional credits for State death taxes and for tax on prior transfers and a small reduction in the unified credit.

The Administration Trust is a revocable inter vivos trust established by decedent[3] and is the residuary legatee of her probate estate.[4] Under Article IV of the trust instrument, the Administration Trust is obliged to pay all death taxes, but Article III of the second codicil to decedent's will directs that all death taxes be first paid out of decedent's probate estate as

---

[3]The beneficiaries of the Trust are three subtrusts: The first for the benefit of decedent's niece Mary M. Hanson and decedent's friend Jean Ehlinger and the two other subtrusts known as the Bessie I. Mueller Irrevocable Trusts A and B for the benefit of decedent's grandchildren: Justin R. Mueller, Anne E. Mueller, and Heidi M. Mueller.

[4]The noncharitable legatees of decedent's estate are decedent's sons John S. Mueller and James F. Mueller; decedent's two granddaughters by son John, Anne E. Mueller and Heidi M. Mueller; Bessie I. Mueller Irrevocable Trusts A (f/b/o grandson Justin R. Mueller) and B (f/b/o granddaughters Anne E. Mueller and Heidi M. Mueller); the Bessie I. Mueller Administration Trust; decedent's niece Mary M. Hanson; friend Jean M. Ehlinger; decedent's nephew William E. Pearson; and friend Harriet Suggs.

an expense of administration and that none of such taxes be apportioned between or among the recipients of her property. Since the probate assets were only sufficient to pay approximately 5 percent of the death taxes, the trustees of the Administration Trust advanced the funds for full payment of death taxes, including the tax liability shown on petitioner's estate tax return. The parties in interest thereafter petitioned the probate court for an apportionment order; the ground of the petition was the apparent conflict in the death tax payment provisions of decedent's will and the Administration Trust, and the requirements of the Michigan Uniform Estate Tax Apportionment Act, Mich. Comp. Laws secs. 720.11-720.21 (1979). The probate court's order held the Administration Trust responsible for 71.9 percent of the Federal estate tax liability already paid.[5] The probate court's order concludes that the apportionment will be subject to adjustment, following review by the tax authorities, in accordance with the same methodology used to effectuate the apportionment of the original payment. The Administration Trust will be reimbursed for payment of some additional estate tax

[5]The recipients of property in the decedent's gross estate participating in the apportionment of death taxes were:

| | |
|---|---|
| Administration Trust | 71.9% |
| Decedent's Estate | 3.4% |
| James F. Mueller | 10.6% |
| John S. Mueller | 10.6% |
| E. B. Mueller Insurance Trust | 3.0% |
| Decedent's Condo (sic in stipulation) | 0.5% |

arising from our determination of the increased date-of-death fair market value of the shares. However, any such reimbursement will not disturb or reduce the estate tax paid by the Trust with respect to the shares owned by it that were included in the gross estate, and with respect to which it overpaid income tax when it sold the shares. Under the apportionment order of the probate court, any recoupment allowed would relate solely to estate tax that the Administration Trust has paid on the inclusion in the gross estate of shares owned by and appointed to it. Any adjustment through recoupment would benefit solely the Administration Trust (and, through it, its three beneficiary subtrusts and their beneficiaries).

On decedent's date of death, the Administration Trust owned 5,150 of the 8,924 shares included in her gross estate. The Administration Trust received an additional 1,500 shares from the Ebert B. Mueller Marital Trust, pursuant to decedent's exercise of a testamentary general power of appointment.[6] Consequently, as of the date of death, the Administration Trust owned 6,650 shares of Mueller Co., all of which were included in decedent's gross estate.[7] On May 30, 1986, 67 days after decedent died, the

---

[6]Decedent also exercised the same testamentary power to appoint 1,000 shares from the same Ebert B. Mueller Marital Trust to each of her sons, John S. Mueller and James F. Mueller.

[7]The gross estate also included the 2,000 shares appointed to the two sons under the testamentary general power of appointment, as well as 274 shares owned by the Ebert B. Mueller
(continued...)

Administration Trust (along with all other owners of shares in Mueller Co.) sold all its shares for $2,150 per share.[8]

On April 15, 1987, the Administration Trust filed its fiduciary income tax return (Form 1041) for the taxable year 1986 reporting $4,572,500 of capital gain on the sale of all 6,650 shares owned by it, and paid $912,378 in Federal income tax on the gain. The Administration Trust computed its capital gain using a date-of-death fair market value basis of $1,462 per share under section 1014(a)(1).

On November 16, 1987, 11 months after petitioner had filed its Federal estate tax return reporting the fair market value of the shares at $1,505 per share, the Administration Trust filed an amended fiduciary income tax return recomputing the gain, using a basis of $1,500 per share, rather than $1,462. The "amended return", as it was labeled, stated: "Taxpayer erroneously used the wrong basis for the shares of Mueller Company which were sold

---

[7](...continued)
Life Insurance Trust. The apportionment of Federal estate tax to the sons, as set forth in note 5 supra, is attributable primarily to their receipt of shares pursuant to decedent's exercise of the power of appointment in their favor.

[8]The actual sale of the 1,500 shares acquired by the Administration Trust upon decedent's death was in fact carried out by the Comerica Bank as Trustee of the Ebert B. Mueller Marital Trust, but it was on behalf of the new owner, the Administration Trust. The gain realized upon the sale of the 1,500 shares was treated as distributable net income of the Administration Trust, and the Administration Trust included the gain realized on the sale of the 1,500 shares in its taxable income for 1986.

during the year. The amended return reflects the correct tax basis of $1,500 per share. There were no other changes." Other than the return itself and the statement attached thereto, no written or oral communication to the Internal Revenue Service preceded or accompanied the filing of the amended return. On February 15, 1988, respondent responded to the amended return by refunding $50,001, plus interest, to the Administration Trust. Respondent has never issued a statutory notice of deficiency to the Administration Trust or otherwise determined a deficiency in its Federal income tax for the taxable year 1986. The Administration Trust is not a party to this proceeding.

On or about September 10, 1990, the Administration Trust filed a second amended fiduciary income tax return claiming an $862,377 refund of the income tax it had paid on the capital gain from the sale of the 6,650 shares. This amended return was filed 3 years and 5 months after the Administration Trust had originally filed its Federal income tax return and paid the income tax for the taxable year 1986. This was less than 3 years after the Administration Trust had filed its first amended 1986 income tax return, almost 1 year after respondent had issued the statutory notice to petitioner, and 7 months after petitioner had filed its petition. The Administration Trust's second amended return bore the designation "Amended Return - Correction" and claimed that, in computing the gain on the sale of the shares, it had used a fair market value basis that was $650 lower than the

fair market value respondent used in determining the amount includable in decedent's gross estate and that the claim was being filed to protect the Administration Trust's rights pending the outcome of this Tax Court proceeding to redetermine the date-of-death fair market value of the shares. On April 22, 1991, respondent disallowed the Administration Trust's claim for refund of 1986 income tax on the ground that the claim had not been timely filed within the 3-year statutory limitation period.

Not considering any other issues, the income tax that would have been reported by the Administration Trust from the gain on the sale of the 6,650 shares, using a sales price of $2,150 and a cost or other basis of $1,700 per share, would have been approximately $596,378. Not considering any other issues, the difference between the amount of income tax actually paid by the Administration Trust on the gain from the sale of 6,650 shares (approximately $862,377) and the amount of such tax that would have been reported due using a basis of $1,700 per share (approximately $596,378) would have been approximately $265,999. Based on our decision that the fair market value of the shares was $1,700 per share at the time of decedent's death, her gross estate is increased by $1,740,180 (8,924 shares X $195 per share) over the amount shown on the Federal estate tax return, and this increase results in the increase of $957,099 in Federal estate tax liability previously described.

Not considering any other adjustments, once one takes into account both our Mueller I opinion on the date-of-death fair market value of the shares and respondent's allowance of the credit for tax on prior transfers not claimed on the Federal estate tax return,[9] the parties agree that there is no deficiency in petitioner's estate tax; petitioner is in an estate tax overpayment posture, whether or not equitable recoupment applies in this case. This is because the credit for previously taxed property that petitioner failed to claim on its estate tax return and that respondent has allowed (and all agree, properly so) exceeds the amount of the tentative deficiency resulting from our valuation of the shares. And this will be true irrespective of whether the credit for State death taxes ultimately allowable is the amount claimed on the estate tax return as filed or the larger credit that the parties agree would be allowed as a result of the increase in the tentative deficiency resulting from our valuation of the shares:[10]

```
Credit for previously taxed property  . . . . .  $1,152,649
Less:  Agreed reduction in unified
       credit . . . . . . . . . . . . . . . 6,000

       Deficiency attributable to
```

---

[9]This credit was for property received by decedent from the estate of Robert E. Mueller, her stepson.

[10]It's not clear from the parties' stipulation on this point whether they've taken into account the partially offsetting reduction in the credit for State death taxes that would result from the reduction in estate tax liability arising from the application of equitable recoupment. The answer to this question would have no effect on the outcome.

```
        redetermination of value of shares
        at $1,700 per share  . . . . . . 957,099      963,099

Minimum overpayment prior to recoupment . . . .      189,550
Plus:  Maximum increase in credit for State
        death taxes  . . . . . . . . . . . . .       278,428
Maximum overpayment prior to recoupment . . . .      467,978
Plus:  Claimed recoupment . . . . . . . . . .        265,999
Maximum overpayment with recoupment . . . . . .      733,977
```

Petitioner's amended petition, filed April 22, 1991, asserted two affirmative partial defenses against respondent's estate tax deficiency determination:  First, that although the Administration Trust's September 10, 1990, claim for refund was barred by the statute of limitations, respondent erred by not applying equitable recoupment to reduce petitioner's estate tax deficiency by the Administration Trust's 1986 income tax overpayment caused by its use of a basis for the shares that was too low; and, second, that respondent erred in not applying the statutory mitigation provisions to allow the Administration Trust to file a timely claim for refund to recover the amount of the related overpayment.  Issue was joined on both the equitable recoupment and statutory mitigation defenses when respondent denied these allegations in her amended answer.

After we issued our opinion on the valuation issue, Mueller I, respondent moved, on the ground that the Tax Court lacked jurisdiction to grant equitable recoupment relief, to dismiss those paragraphs of the amended petition asserting the partial defense of equitable recoupment.  In response, we issued Mueller II, holding that this Court has authority to apply equitable

recoupment, and denied respondent's motion.  We reserved the issue of petitioner's entitlement to equitable recoupment relief for further proceedings, and this case has been tried, submitted, and briefed for the Court's opinion on the issue of equitable recoupment.

Subsequent to the filing of the amended petition, the parties presented no arguments on the issue of statutory mitigation.  It only arose, in a preliminary skirmish that led nowhere, in Respondent's Request for Admissions and Petitioner's Answer to Respondent's Request for Admissions.

## Discussion

The doctrine of sovereign immunity persists as a jurisdictional limitation on suits against the United States, FDIC v. Meyer, 510 U.S. 471, ___, 114 S. Ct. 996, 1000 (1994); United States v. Dalm, 494 U.S. 596, 608 (1990); United States v. Forma, 42 F.3d 759, 763 (2d Cir. 1994), and jurisdictional limitations based on sovereign immunity apply equally to counterclaims against the Government, United States v. Forma, supra at 764.  Case law, however, has developed a significant limitation to the general bar of sovereign immunity against counterclaims:  Despite sovereign immunity, a defendant may, without statutory authority, recoup on a counterclaim that would otherwise be barred by the statute of limitations an amount not in excess of the principal claim.  Id. (citing United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 511 (1940)).

In the tax area, where the taxpayer in a refund suit or a proceeding in this Court is put in the position of the "plaintiff", the Supreme Court has applied the general doctrine of recoupment, in the specific form of equitable recoupment, in Bull v. United States, 295 U.S. 247 (1935). See also United States v. Dalm, supra at 605-606 n.5; Rothensies v. Electric Storage Battery Co., 329 U.S. 296 (1946); Stone v. White, 301 U.S. 532 (1937). Under the equitable recoupment doctrine, taxpayers in Federal tax proceedings may raise recoupment as an affirmative defense, rather than as a counterclaim. United States v. Dalm, supra at 607; Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 420-421 (1943); Mueller II, 101 T.C. at 560. The Government is also entitled to raise this defense, Stone v. White, supra, so that either side may assert it, in certain limited circumstances, to remove the bar of the expired statutory limitation period in order to prevent inequitable windfalls to either taxpayers or the Government. Those limited circumstances are that otherwise such a windfall would result from inconsistent tax treatment of a single transaction, item, or event affecting the same taxpayer or a sufficiently related taxpayer. United States v. Dalm, supra at 605-606 n.5.

Equitable recoupment thus requires, and I address in turn: (1) That the refund or deficiency for which recoupment is sought by way of offset be barred by time; (2) that the time-barred offset arise out of the same transaction, item, or taxable event

as the overpayment or deficiency before the Court; (3) that such transaction, item, or taxable event have been inconsistently subjected to two taxes; and (4) that there be sufficient identity of interest between the person or persons subject to the two taxes.[11]  Although recoupment may further require (5) that the situation not be one to which the mitigation provisions, sections 1311 through 1314, apply, respondent has waived that argument in this case.  I then consider (6) any additional equitable factors and, finally, (7) the effect of the presence of the estate tax overpayment, the issue on which the majority have chosen to dispose of this case.

1.  Refund Time-Barred

Not until September 10, 1990, did the Administration Trust file the claim for refund of its April 15, 1987, payment of income tax that is now at issue.  That claim would appear to be barred by section 6511(a), which requires that such a claim be made within 3 years from the time the return was filed, and the return was filed on the same date that the payment was made, April 15, 1987.[12]

---

[11]United States v. Dalm, 494 U.S. 596, 608 (1990), makes clear the further requirement, not in issue in this case, that there be a basis for jurisdiction in the case independent of equitable recoupment.  In this case, the statutory notice and petition are clearly valid and were timely filed, and consequently we have independent jurisdiction over the deficiency originally determined by respondent (and the overpayment that we must now determine).

[12]Because the expiration of this 3-year period occurred
(continued...)

Petitioner has suggested, although not on brief, that the Administration Trust's refund claim was a timely amendment of the timely filed amended return of November 16, 1987.  Petitioner refused respondent's request to admit that the second amended return was not a timely claim for refund.  Respondent has argued that petitioner's refusal to stipulate that the second refund claim is barred constitutes a failure to establish an essential element of its claim for equitable recoupment and is sufficient ground for denying petitioner the relief it seeks.  To the contrary, I would regard it as sufficient that we can satisfy ourselves that the claim is barred.  I don't believe that petitioner needs to concede the point for the purposes of this proceeding.

The essential question on this point is whether the original amended return of November 16, 1987, gave respondent sufficient notice of the tax overpayment now sought through equitable recoupment and sufficient information to enable respondent to investigate the claim.  United States v. Andrews, 302 U.S. 517, 524 (1938) ("a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not

---

[12](...continued)
later than the expiration of the 2-year period after the payment of the tax, that alternative date need not be considered.  Sec. 6511(a) directs us to use the later date.

germane to the first claim"); <u>United States v. Memphis Cotton Oil Co.</u>, 288 U.S. 62, 72 (1933); <u>United States v. Felt & Tarrant Manufacturing Co.</u>, 283 U.S. 269, 272-273 (1931); <u>In re Ryan</u>, 64 F.3d 1516, 1520-1521 (11th Cir. 1995); <u>United States v. Forma</u>, 42 F.3d at 767 n.13; <u>American Radiator & Standard Sanitary Corp. v. United States</u>, 162 Ct. Cl. 106, 318 F.2d 915, 920-922 (1963); secs. 301.6402-2, 301.6402-3, Proced. & Admin. Regs.  Under the variance doctrine, taxpayers are obliged in their refund claims to identify the assets at issue and to state why they were treated improperly.  It is not enough to state a related claim. The policy ground for not allowing time-barred claims that impermissibly vary from timely claims is that the Commissioner lacks the time and resources to perform extensive investigations into the precise reasons and facts supporting every taxpayer's claim for refund.  <u>Charter Co. v. United States</u>, 971 F.2d 1576, 1579-1580 (11th Cir. 1992); cf. <u>Angelus Milling Co. v. Commissioner</u>, 325 U.S. 293, 297-298 (1945).

Whether the grounds for the Administration Trust's second refund claim of September 10, 1990, vary impermissibly from the grounds for the amended return filed on November 16, 1987, need not detain us--although I incline to believe they do so vary. Respondent's acceptance and allowance of the Administration Trust's 1987 claim provides sufficient basis for the conclusion that its 1990 refund claim is time-barred.  See, e.g., <u>Union Pacific R.R. Co. v. United States</u>, 182 Ct. Cl. 103, 389 F.2d 437,

447 (1968) (fully paid refund claim can't be revived by belated amendment after expiration of the period of limitations on the original claim). The variance doctrine is based on a requirement that respondent have sufficient notice of taxpayers' claims, and, in the facts and circumstances of this case, I would conclude that respondent did not have such sufficient notice of the 1990 claim within the statutory time limits. Cf. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 72 (1933) (suggestion that if amendments to informal claim had been made after it had been rejected on merits, they would have been too late); Lefrak v. United States, 1996 WL 420308 (S.D.N.Y., July 26, 1996) (imperfect claim that has been rejected cannot be perfected by a later, time-barred claim lacking the defect).

## 2. Single Transaction

For the doctrine of equitable recoupment to apply, a single transaction, item, or event must have been taxed twice inconsistently. United States v. Dalm, 494 U.S. at 608 (construing Bull v. United States, supra, and Stone v. White, supra).

Although the "single transaction" requirement was mentioned in passing in Bull v. United States, 295 U.S. at 261, it was the stated ground for decision in Rothensies v. Electric Storage Battery Co., 329 U.S. at 300. In that case, the taxpayer in 1935 obtained a refund of excise taxes paid for the years 1922 through 1926 that turned out not to have been due. Refunds of the type

of excise taxes paid could not be obtained for the earlier years 1919 through 1921 because those years were already time-barred. The Commissioner then determined that the excise tax refund for the years 1922 through 1926 should be included in the taxpayer's gross income in 1935, the year of receipt. The taxpayer paid under protest and brought a refund suit, arguing that the refund was not taxable income and, in the alternative, that the income tax should be reduced by equitable recoupment on account of the time-barred overpaid excise taxes for the earlier years 1919 through 1921 for which it had been denied a refund. In District Court, the taxpayer lost on the income inclusion issue, but won on the recoupment issue. Electric Storage Battery Co. v. Rothensies, 57 F. Supp. 731 (E.D. Pa. 1944). The Court of Appeals for the Third Circuit affirmed, holding that the interpretation of "transaction" should be informed by the "concepts of fairness" basic to the doctrine of recoupment, so that all the doctrine required was a "logical connection" between the main claim and the recoupment claim. Electric Storage Battery Co. v. Rothensies, 152 F.2d 521, 524 (3d Cir. 1945). In reversing on the equitable recoupment issue, the Supreme Court rejected the Third Circuit's reasoning. The Supreme Court insisted that the equitable recoupment doctrine required that a single transaction constitute both the taxable event claimed upon and the one considered in recoupment and held that the single

transaction requirement had not been satisfied.  Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299 (1946).

What must be emphasized is that actually there was no logical connection--much less a causal relationship--between the time-barred excise tax refunds for 1919-21 and the inclusion in taxable income for 1935 of the excise taxes paid for 1922-26. Considering each year as a separate cause of action, cf. Commissioner v. Sunnen, 333 U.S. 591, 598 (1948), there was no transactional nexus whatsoever between the time-barred excise taxes paid in 1919-21 and the excise taxes paid in 1922-26 that the taxpayer recovered and was required to include in income in 1935.  All the time-barred and the recovered excise taxes had in common was the coincidence of the same general subject matter.

Since Rothensies v. Electric Storage Battery Co., supra, the Supreme Court has not revisited the single-transaction requirement of equitable recoupment except in dicta in United States v. Dalm, supra at 605 n.5, where it did say that in Rothensies v. Electric Storage Battery Co. it had emphasized that the condition that must be satisfied is that "the Government has taxed a single transaction, item, or taxable event".  The inclusion of "item" in this phrase is significant for our case. Although the income and estate taxes in this case were arguably imposed on different taxable events (the estate tax was imposed on the transfer of the shares on decedent's death, whereas the income tax was imposed upon the gain from the sale of the shares

67 days thereafter), they were imposed on the same item (the same shares of stock), in the sense that the date-of-death value of the shares was a necessary element in determining the amount of the liability for both taxes. Whether they were imposed on the same "transaction" can be debated, and is addressed below.

In the absence of any decision by the Supreme Court on the subject since Rothensies v. Electric Storage Battery Co., supra, the interpretation and application of the single-transaction requirement has largely been left to the lower courts, resulting in two lines of conflicting authority.

The two cases on which petitioner largely relies are United States v. Bowcut, 287 F.2d 654 (9th Cir. 1961) and United States v. Herring, 240 F.2d 225 (4th Cir. 1957). Both these cases, like the case at hand, concerned the estate tax and the income tax, and the two taxes had not been imposed on the same taxable event. Nevertheless, in both cases the single-transaction requirement of equitable recoupment was held to be satisfied, and equitable recoupment was applied in the taxpayers' favor. In each case, after a death, estate tax was paid and thereafter the Government sought additional income tax from the estate for income not reported during the decedent's lifetime. After paying the income tax, the estate sued for refund of income tax on the ground that it was entitled to equitable recoupment of the overpayment of then time-barred estate tax resulting from the estate's failure to claim the increased income tax liability as a debt in

determining the taxable estate.  In <u>Herring</u>, the Court of Appeals found that, although the case might differ from <u>Bull</u>, in practical effect both of the Government's claims grew out of the same transaction and were asserted against the same assets in the hands of the executor.  <u>United States v. Herring</u>, 240 F.2d at 228.  The court in <u>Herring</u> distinguished <u>Rothensies v. Electric Storage Battery Co.</u>, <u>supra</u>, on the ground that the two sets of transactions there had been so very remote from each other that the claims for which recoupment was sought were long dead.  <u>Id.</u> at 227.  In <u>Bowcut</u>, the District Court reached the same result on the basis of <u>Herring</u>.  <u>Bowcut v. United States</u>, 175 F. Supp. 218, 221-222 (D. Mont. 1959), affd. 207 F.2d 654 (9th Cir. 1961).  The Court of Appeals did not consider the single-transaction issue, as the Government appealed primarily on other grounds, lack of clean hands and laches, which the Court of Appeals rejected as grounds for denying equitable recoupment, <u>United States v. Bowcut</u>, 287 F.2d at 656-657 & n.1.  The Commissioner acceded to these decisions in Rev. Rul. 71-56, 1971-1 C.B. 404,[13] which like them concerns the application of a barred overpayment of Federal estate tax against outstanding assessments of income tax owed by a decedent for years preceding death and provides for administrative allowance of equitable recoupment in that situation.

---

[13]Revoking Rev. Rul. 55-226, 1955-1 C.B. 469.

Despite the statement of administrative position in Rev. Rul. 71-56, supra, respondent has chosen, in the case at hand, to hang her hat on contrary decisions of the old Court of Claims. In Wilmington Trust Co. v. United States, 221 Ct. Cl. 686, 610 F.2d 703 (1979), in two consolidated cases, the Commissioner assessed income tax deficiencies against the taxpayers after their deaths, and the executors deducted the income taxes paid as claims against the decedents' gross estates. In the subsequent refund suits to recover the income tax payments, the Commissioner sought, through equitable recoupment of the time-barred estate tax deficiencies, to reduce the refunds. In both cases, the trial judges, citing Herring v. United States, supra, Bowcut v. United States, supra, and Rev. Rul. 71-56, found that the single-transaction requirement had been satisfied, and recommended decision for the Government. Wilmington Trust Co. v. United States, 43 AFTR 2d 79-801, 79-1 USTC par. 9223 (Ct. Cl. Trial Div. 1979); McMullan v. United States, 42 AFTR 2d 78-5723, 78-2 USTC par. 9656 (Ct. Cl. Trial Div. 1978). The Court of Claims reversed and remanded both cases, stating that it was obliged by Rothensies v. Electric Storage Battery Co., 329 U.S. 296 (1946), to give the single-transaction requirement a narrow, inflexible interpretation. Wilmington Trust Co. v. United States, 610 F.2d at 713. In these consolidated cases, unlike Herring and Bowcut-- and unlike the case at hand--it was the Government that was seeking equitable recoupment.

In applying the single-transaction test so restrictively, the Court of Claims relied on its earlier opinion in Ford v. United States, 149 Ct. Cl. 558, 276 F.2d 17 (1960), whose facts were closer to our case. Taxpayers had received shares of stock in 1939 from their father's estate, which had reported the shares at an estate tax value of approximately $11,900. On audit of the estate tax return, there had been an upward adjustment to $23,715, which the estate accepted. In 1947, taxpayers sold the shares, reported a date-of-death income tax basis of $165,800, and claimed refund of an overpayment on this ground. The Court of Claims determined the date-of-death value to be $165,000. Neither taxpayers nor the Government adverted to whether the Government might be entitled to recoupment of the time-barred underpaid estate tax against the income tax refund. The Court of Claims on its own initiative considered the issue, and, by a 3-2 vote, held that the Government was not entitled to recoupment because the facts were not identical to those in Bull v. United States, supra, and Stone v. White, supra. The Court of Claims said that Rothensies v. Electric Storage Battery Co., 329 U.S. 296 (1946), held that the doctrine of equitable recoupment was not flexible, but strictly limited, and limited for the good reason that if the doctrine were broadened there would never come a day of final settlement in the income tax system. Ford v. United States, 276 F.2d at 23. The Court of Claims did not cite United States v. Herring and United States v. Bowcut, and Rev.

Rul. 71-56 had not yet been issued.  In Ford, as in Wilmington Trust, but not as in Herring, Bowcut, or the case at hand, it was the Government's claim to equitable recoupment that was denied.

When the Court of Claims later decided Wilmington Trust, it was already committed to its prematurely expressed and ill-considered view in the Ford case.  I agree with petitioner that Herring and Bowcut reflect the preferable view.  To deny that there is a single transaction for equitable recoupment purposes in the Herring-Bowcut situation wouldn't serve the purposes of statutes of limitation.  Requiring only that the connection between the two taxable events be causally automatic (as in Herring-Bowcut and in our case) serves to avoid the kind of staleness that the Supreme Court feared in Rothensies v. Electric Storage Battery Co., supra.  This requirement of at least automatic causality also helps to ensure that the Commissioner and the taxpayer aren't obliged to perform extensive additional investigation and recordkeeping; the concept of final repose isn't overwhelmingly important where the claim of one party may only be inchoate or not even exist until there has been a determination on the open claim, at which time the former claim may already be barred.  To rely on the need for final repose as barring equitable recoupment in this situation would make a mockery of the concept of repose.[14]

---

[14]Academic commentators have almost invariably supported Herring-Bowcut against the Court of Claims.  See Andrews, Modern-

(continued...)

The Courts of Appeals have lined up on both sides.  In <u>Boyle v. United States</u>, 355 F.2d 233 (3d Cir. 1965), revg. and remanding 232 F. Supp. 543 (D.N.J. 1964), after the decedent died leaving shares of preferred stock, dividend arrearages were added to their value, and estate tax was paid accordingly.  The distributees, on receiving those dividends, listed them as nontaxable for income tax purposes, and the Commissioner determined income tax deficiencies.  The distributees paid the income tax deficiencies and brought a refund suit.  The District Court denied them equitable recoupment against the then time-barred estate tax, holding that the single-transaction test of <u>Rothensies v. Electric Storage Battery Co.</u> was not satisfied. <u>Boyle v. United States</u>, 232 F. Supp. at 549-550.  The Court of Appeals reversed, <u>Boyle v. United States</u>, 355 F.2d at 236, holding that there had been double taxation of a single item, the same fund, which sufficed to satisfy the requirements of <u>Bull v. United States</u>, and that treatment of the same fund as both corpus and income provided the necessary inconsistency of treatment. <u>Id.</u> at 235.  The Court of Appeals distinguished <u>Rothensies v. Electric Storage Battery Co.</u> on the ground that the lapse of so much time there made it more distant from the case before the

---

[14](...continued)
Day Equitable Recoupment and the "Two-Tax Effect":  Avoidance of the Statutes of Limitation in Federal Tax Controversies, 28 Ariz. L. Rev. 595, 630-650 (1986); Willis, Some Limits of Equitable Recoupment, Tax Mitigation, and Res Judicata: Reflections Prompted by <u>Chertkof v. United States</u>, 38 Tax Law. 625, 642-645 (1985).

Court than Bull.  Id. at 236-237.  Respondent attempts to distinguish Boyle from our case on the ground that what was at issue in Boyle was whether the second tax should have been paid at all on the transaction, not whether it was overpaid.  However, the Court of Appeals doesn't seem to have relied on that fact, and I don't see the distinction as dispositive.  Thus, Boyle supports Herring-Bowcut, and petitioner's view of the single-transaction issue in this case.

In O'Brien v. United States, 766 F.2d 1038 (7th Cir. 1985), revg. 582 F. Supp. 203 (C.D. Ill. 1984), the District Court held squarely that the single-transaction requirement is satisfied where the issue is inconsistency in establishing fair market value of the same property for the purpose of determining the gross estate and the basis of the property (the situation in the case at hand), and the Court of Appeals for the Seventh Circuit appears to have agreed.  Respondent correctly points out that any statement of the Court of Appeals to that effect was dictum, as that Court reversed the District Court's decision to apply equitable recoupment, on a ground not relevant to our case (later confirmed by Dalm), that equitable recoupment requires an independent basis for jurisdiction.  O'Brien v. United States, 766 F.2d at 1049.  But the Court of Appeals did say, even if in dictum, that the single-transaction test of Rothensies v. Electric Storage Battery Co., supra, "appears to be satisfied on

these facts if we adopt the reasoning of the Third Circuit in
Boyle." Id. at 1050 n.16.

After the O'Brien decedent had died, his estate paid estate
tax on stock in his estate at one value. Then, after the estate
sold the stock, it paid income tax using that same value as its
basis. The Commissioner then determined a higher value for
estate tax purposes, and a stipulated decision was entered in
this Court resolving the estate tax dispute using a higher value.
One of decedent's heirs and children then sued for a refund of
overpaid income tax, on which the period of limitations had
expired, arguing that the basis used for the stock should have
been higher and using equitable recoupment as the ground for the
suit. The District Court agreed, finding that the single-
transaction requirement of Rothensies v. Electric Storage Battery
Co. had been satisfied.[15] O'Brien v. United States, 582 F. Supp.
at 205-206. Like the Court of Appeals in Boyle, the District
Court in O'Brien relied on Bull, finding it closer to its case
than Rothensies v. Electric Storage Battery Co. The District
Court distinguished Rothensies v. Electric Storage Battery Co. on
the ground that in that case the Government had not taken
inconsistent positions, the dispute having been precipitated by

_____

[15]The taxpayer also argued for the refund under the
statutory mitigation provisions, secs. 1311-1314, and the
District Court also bought this argument, O'Brien v. United
States, 582 F. Supp. 203, 206-207 (C.D. Ill. 1984), under
Chertkof v. United States, 676 F.2d 984 (4th Cir. 1982). The
Court of Appeals also reversed this conclusion.

the plaintiff's successful, but belated, challenge of the legality of the excise tax. O'Brien v. United States, 582 F. Supp. at 206. The District Court distinguished Ford v. United States, supra, finding it not in point for reasons that it does not make very clear and finding the case before it indistinguishable from Bull. Id. Although the Court of Appeals was somewhat guarded in its language, it does not seem to have disagreed. It reversed solely because of the lack of an independent basis for jurisdiction, the period of limitations having expired on the income tax refund claim that was the subject of the taxpayer's lawsuit. O'Brien v. United States, 766 F.2d at 1048-1051. Even if the reversal of the District Court on this ground caused what the Court of Appeals said about the single-transaction issue to be dictum, all this supports petitioner's view of the issue in our case, which is similar to the facts in O'Brien.

Respondent asserts that Minskoff v. United States, 349 F. Supp. 1146 (S.D.N.Y. 1972), affd. per curiam 490 F.2d 1283 (2d Cir. 1974), supports her view of the single-transaction requirement. In that case, an estate brought a refund action against the Government for recovery of estate tax on the decedent's interest in a corporation; the Government had collected income tax in 1961 on the proceeds from the decedent's sale of his interest in the corporation in 1949, prior to his death in 1950 (at trial, the Government was successful in proving

that the decedent had sold his interest prior to his death).  As in Herring and Bowcut, the refund suit was ostensibly for overpaid income tax (which was not yet time-barred) but in fact was grounded on equitable recoupment of the earlier, time-barred overpaid estate tax.  Equitable recoupment was denied.  Respondent interprets this case to mean that, to satisfy the single-transaction requirement, not only must two taxes have been imposed, but they must have been imposed on a single transaction on inconsistent legal theories.  However, although both the District Court and the Court of Appeals cited Rothensies v. Electric Storage Battery Co., supra, failure to satisfy the single-transaction test was not clearly the basis of their refusal to allow equitable recoupment.  Actually, it was quite proper for the Government to impose both taxes on the amount in question, and there was therefore no proper basis for recoupment.[16]  Indeed, the District Court did say that Bull only allows recoupment where the imposition of two taxes rests on inconsistent theories, as opposed to inconsistent factual determinations, Minskoff v. United States, 349 F. Supp. at 1149, and the Court of Appeals affirmed on that ground, 490 F.2d at 1285.  If the opinions in Minskoff were right on this point, petitioner in the case at hand would lose, as the inconsistency in tax treatment rests on a factual issue, the value of the

---

[16]See Tierney, Equitable Recoupment Revisited:  The Scope of the Doctrine in Federal Tax Cases after United States v. Dalm, 80 Ky. L.J. 95, 100 n.15 (1992).

stock.  However, the <u>Minskoff</u> courts are unpersuasive in distinguishing <u>Bull</u> on this fact-law distinction:  The issue of whether the amounts in <u>Bull</u> were income or part of the gross estate was a mixed question of fact and law.  Similarly, the issue in <u>Dalm</u> was the <u>factual</u> one of whether the payments had been gifts or income for services,[17] and everything indicates that, had it not been for the lack of an independent basis for jurisdiction, Mrs. Dalm would have won her suit.[18]  No other decision decides whether or not to apply equitable recoupment on the basis of this distinction.  I conclude that the <u>Minskoff</u> case does not clearly use failure to satisfy the single-transaction requirement to justify its refusal to apply equitable recoupment, is wrong in its fact-law distinction, and is in any event clearly distinguishable from our case.[19]

_____

[17]See <u>Commissioner v. Duberstein</u>, 363 U.S. 278, 289-290 (1960).

[18]In <u>United States v. Dalm</u>, 867 F.2d 305 (6th Cir. 1989), revd. 494 U.S. 596 (1990), the Sixth Circuit found all the requirements for equitable recoupment to be met except for the one, different factual issue of whether the Tax Court settlement already took account of the overpaid gift tax and remanded to the District Court to determine that issue.  In reversing on the jurisdictional issue, the majority of the Supreme Court expressed no misgivings about the factual basis of the inconsistent tax treatment and indeed suggested that, had it not been for the jurisdictional issue, Mrs. Dalm could have had her refund:  "Our holding today does not leave taxpayers in Dalm's position powerless to invoke the doctrine of equitable recoupment." <u>United States v. Dalm</u>, 494 U.S. at 610.

[19]The District Court in <u>Minskoff v. United States</u>, 349 F. Supp. 1146 (S.D.N.Y. 1972), affd. per curiam 490 F.2d 1283 (2d Cir. 1974), advanced alternative grounds for its correct result,
                                                    (continued...)

The Court of Claims view <u>was</u> applied under somewhat different circumstances in <u>Estate of Mann v. United States</u>, 552 F. Supp. 1132 (N.D. Tex. 1982), affd. 731 F.2d 267 (5th Cir. 1984), a case cited by neither party.  There, after a holding that a decedent's estate was entitled to an income tax refund on the ground that a bad debt had been a business debt, the Government's equitable recoupment claim, based on the ground that the estate should have paid estate tax on the refund claim, was denied.  As the District Court observed, because refund suits

---

[19](...continued)
and one of these may have been correct.  The first and arguably correct one of these alternative grounds was that the estate had not proved that there was any factual inconsistency, still less its actual amount.  <u>Id.</u> at 1150.  The Court of Appeals, although it felt no need to decide the case on any but the first ground (fact as opposed to law), approved the District Court's reasoning about the estate's failure of proof in a footnote, <u>Minskoff v. United States</u>, 490 F.2d at 1285 n.1, and on this basis distinguished <u>Boyle v. United States</u>, 355 F.2d 233 (3d Cir. 1965), where the sum at issue could not have been earned both before and after the death of the decedent.  (The District Court had felt that <u>Boyle</u> was inconsistent with <u>Rothensies v. Electric Storage Battery Co.</u>, 329 U.S. 296 (1946), and had therefore refused to follow <u>Boyle v. United States</u>, <u>supra</u>.  <u>Minskoff v. United States</u>, 349 F. Supp. at 1150 n.3.)  With respect to this issue of proof, our case resembles <u>Boyle</u>, rather than <u>Minskoff</u>: Different valuations of a stock at the same time are inconsistent on their face, and there is no need for petitioner to prove anything on this score.

The District Court's other alternative ground was that equities weren't on the side of the taxpayer, who had failed to report as income capital gain that clearly should have been reported, and that therefore the doctrine of equitable recoupment, being in the nature of an equitable defense, could not be invoked by a party lacking clean hands.  <u>Id.</u> at 1150.  As we shall see <u>infra</u> pp. 68-69, this is an aberrant view that courts generally don't follow, which may no longer be respondent's view, and which is incorrect.  The Court of Appeals was silent on this issue in <u>Minskoff</u>.

based on the deduction of worthless business debts are allowed for 7 years, under section 6511(d)(1), and because the issues posed by the two claims would require substantially different proof, to allow recoupment in this situation would seriously undermine the statute of limitations. Estate of Mann v. United States, 552 F. Supp. at 1141. However, the District Court also clearly expressed its preference for the reasoning of the Court of Claims over Herring and Bowcut, Estate of Mann v. United States, 552 F. Supp. at 1137-1140, and the Court of Appeals for the Fifth Circuit affirmed, on the basis of Rothensies v. Electric Storage Battery Co., Estate of Mann v. United States, 731 F.2d at 279. Estate of Mann clearly lines up with the Court of Claims on the single-transaction issue, but it can be distinguished from our case. On balance, I regard the later cases as neither strengthening nor weakening my conclusion that Herring and Bowcut represent the preferable view of the law.[20]

Respondent tries to distinguish the case at hand from Herring, Bowcut, and Rev. Rul. 71-56, on the ground that in

---

[20]Our recent decision in Estate of Bartels v. Commissioner, 106 T.C. 430 (1996), furnishes additional implicit support for United States v. Herring, 240 F.2d 225 (4th Cir. 1957), and United States v. Bowcut, 287 F.2d 654 (9th Cir. 1961), as opposed to the contrary cases. In that case, which presented the Herring-Bowcut situation, respondent, consistently with the view announced in Rev. Rul. 71-56, 1971-1 C.B. 404, didn't even raise the single-transaction requirement as an objection to our allowance of the taxpayer's equitable recoupment claim. Estate of Bartels v. Commissioner, at 433 n.4. We therefore found the single-transaction requirement not to be an obstacle to permitting equitable recoupment.

Herring-Bowcut, both the main action and the recoupment claim are occasioned solely by deficiencies, whereas here that characterization was available only for the proceeding before us prior to issuance of our opinion in Mueller I. However, here both the proceeding before us and the recoupment claim are occasioned solely by inconsistent valuations of the same shares of stock. There may not be a single taxable event here, but that is really true in Herring-Bowcut as well. One can also speak of our situation as a single transaction, decedent's death, which occasions the need to value the shares, both to determine the gross estate for estate tax purposes and the step-up in basis for income tax purposes. There is, moreover, the same fund, which can be considered the same item. Cf. Estate of Vitt v. United States, 706 F.2d 871, 875 (8th Cir. 1983) (taxation of same tract of property and inclusion of identical part of value of that property in two instances of imposition of estate tax sufficient to satisfy single-transaction requirement); United States v. Gulf Oil Corp., 485 F.2d 331, 333 (3d Cir. 1973) (taxation of same fund all that is required); Boyle v. United States, 355 F.2d at 236 (taxation of identical "definite fund" all that is required).

This differences between the situation in Rothensies v. Electric Storage Battery Co., on the one hand, and the Herring-Bowcut-Wilmington Trust Co.-Bartels and the Ford-O'Brien-Mueller situations, on the other, and the similarities of the latter two sets of situations, are striking. In Rothensies v. Electric

Storage Battery Co. there is no causal connection between the main claim and the barred claim sought to be recouped (actually set-off).  In the latter two sets of situations, there is a causal connection.  In Herring-Bowcut-Bartels, the determination and payment of an income tax deficiency gave rise to a time-barred estate tax overpayment, which was allowed to be recouped against that deficiency; in Wilmington Trust, the Court of Claims, improperly, I believe, refused to allow the Government to recoup time-barred estate tax deficiencies against the taxpayer estates' recoveries of income tax refunds that generated those deficiencies.  Similarly, in our case, as in Ford and O'Brien, the increase in the value of the shares for estate tax purposes generated an estate tax deficiency and a correlative time-barred income tax overpayment with respect to the same shares.  In our case the causal connection is clear; in Rothensies v. Electric Storage Battery Co. there is no such connection.[21]

Moreover, in another significant respect, the situation in the case at hand is further removed from the Rothensies v. Electric Storage Battery Co. situation than Herring and Bowcut: Here, all the events happened within the same calendar year,

_____

[21]The excursus in the text further sharpens the point of my observation in Fort Howard Corp. v. Commissioner, 103 T.C. 345, 377 n.2 (1994) (Beghe, J., dissenting), that for tax purposes the connections that are important are not so much the logical connections arrived at by reference to the laws of thought and correct syllogistic reasoning as the "logic of events" that has to do with cause and effect relationships and necessary connections or outcomes.

within 67 days of each other.[22]  In addition, the dicta of the Court of Appeals in O'Brien (and the decision of the District Court in that case) find the single-transaction requirement satisfied in a situation that is still closer to the case at hand than the Herring-Bowcut situation.

Finally, in Mueller II, we decided, having been prompted to do so by United States v. Dalm, supra, that we are authorized to apply equitable recoupment.  Dalm wrought a change in the legal landscape that not only led us to change our own view of our authority, but did so in a way that undercuts the broad rationale of the narrow interpretation of the single-transaction requirement urged in Rothensies v. Electric Storage Battery Co., supra.  In deciding that case, the Supreme Court stated emphatically that an important reason for keeping equitable recoupment narrowly confined was its fear that otherwise too many tax cases would be diverted from the Tax Court to the District Courts.  In Rothensies v. Electric Storage Battery Co., supra, the Supreme Court also expressed concern that allowing, through broadly interpreted equitable recoupment, wholesale reexamination of other years would undermine the whole single-year income tax system.  In view of the limitations imposed by my view of the requirements for equitable recoupment, including the single-transaction requirement, the Supreme Court's expression of

[22]Cf. Willis, Some Limits of Equitable Recoupment, Tax Mitigation, and Res Judicata:  Reflections Prompted by Chertkof v. United States, 38 Tax Law. at 640-641.

concern is not reasonably implicated.  My approach is merely lenient enough to admit the Herring-Bowcut situation and this case.  In Rothensies v. Electric Storage Battery Co., supra, the taxpayer was trying to resurrect claims that were 20 years old, whereas in our case only 67 days within the same calendar year separate the two taxable events.  Cf. O'Brien v. United States, 766 F.2d at 1051 n.17 (much to be said for liberally construing single-transaction and identity-of-interest requirements for equitable recoupment, but not for relaxing rule against reopening closed tax years); Aetna Cas. & Sur. Co. v. Tax Appeals, 633 N.Y.S.2d 226, 228 (N.Y. App. Div. 1995) (equitable recoupment allowed so long as taxpayer's counterclaim covers same tax period as Government's claim, so that overpayment can be considered part of same "transaction", (citing National Cash Register Co. v. Joseph, 86 N.E.2d 561, 562 (N.Y. 1949))).

According to Brown v. Secretary of Army, 78 F.3d 645, 650 (D.C. Cir. 1996), the rationale for narrow interpretation of waivers of sovereign immunity is the risk of imposing unanticipated and potentially excessive liabilities on the fisc. The liability imposed on the fisc by interpreting the single-transaction requirement in the way I would do here is strictly limited and can't be regarded as excessive.

I would therefore hold, in the circumstances of this case, where not only has the same fund been subjected to inconsistent double taxation by reason of the decedent's death, but the

taxable events occurred within the same calendar year, and within 67 days of each other, that the single-transaction, item, or event requirement of equitable recoupment has been satisfied.

3. Inconsistent Treatment

Respondent, in denying the Administration Trust's second refund claim made in 1990, treated the same shares inconsistently with respondent's statutory notice to petitioner determining an estate tax deficiency based on a different valuation of those shares at the same time, the time of decedent's death. It follows from my conclusion in the preceding section that this case satisfies the single-transaction requirement that respondent has subjected the same item to inconsistent tax treatment. Thus, the inconsistent-treatment requirement is met.[23]

---

[23]I'm aware that it's not necessarily inconsistent that the same fund should be subjected to both income and gift tax, as the Code sections having to do with those two taxes are not construed in pari materia. Farid-Es-Sultaneh v. Commissioner, 160 F.2d 812 (2d Cir. 1947), revg. 6 T.C. 652 (1946). That does not, however, gainsay a real inconsistency in our case, because both tax results depend upon the same matter of fact, the fair market value of the same shares at decedent's death. It would be inconsistent to hold those shares to have had one value for estate tax purposes and another for income tax purposes. There is a presumption that the estate tax value of an asset is correct and applies also to determine income tax basis. Hess v. United States, 210 Ct. Cl. 483, 537 F.2d 457, 463 (1976); Swift v. Wheatley, 538 F.2d 1009, 1010 (3d Cir. 1976); Levin v. United States, 373 F.2d 434, 438 (1st Cir. 1967); Williams v. Commissioner, 44 F.2d 467, 469 (8th Cir. 1930), affg. 15 B.T.A. 227 (1929); Feldman v. Commissioner, T.C. Memo. 1968-19; sec. 1.1014-3(a), Income Tax Regs.; Rev. Rul. 54-97, 1954-1 C.B. 113.

4.  Identity of Interest

In Stone v. White, 301 U.S. 532 (1937), the Supreme Court permitted the Government to recoup its time-barred deficiency claim against the sole beneficiary of a trust to reduce a timely refund claim brought by the trustees of the same trust.  Thus, the Government's claim against one taxpayer could be raised as a defense to a claim brought by another taxpayer, so long as the two taxpayers had an "identity in interest".  Id. at 537.

Later cases have followed Stone v. White, supra, in finding identity of interest between legally different parties because their interests did in fact coincide.  Estate of Vitt v. United States, 706 F.2d 871 (8th Cir. 1983) (husband's estate and wife's estate); Boyle v. United States, 355 F.2d 233 (3d Cir. 1965) (estate and all the beneficiaries of the estate); United States v. Bowcut, 287 F.2d 654 (9th Cir. 1961) (decedent and his estate); United States v. Herring, 240 F.2d 225 (4th Cir. 1957) (same); Hufbauer v. United States, 297 F. Supp. 247 (S.D. Cal. 1968) (taxpayer and wholly owned corporation); see also O'Brien v. United States, 766 F.2d 1038, 1050-1051 (7th Cir. 1985) (dicta; one of three principal heirs).  But see Kramer v. United States, 186 Ct. Cl. 684, 406 F.2d 1363 (1969) (life tenant annuitant and decedent's estate); Lockheed Sanders, Inc. v. United States, 862 F. Supp. 677, 681-682 (D.N.H. 1994) (parent corporation and subsidiary not qualified as member of affiliated group).

Respondent argues that petitioner and the Administration Trust don't satisfy the identity-of-interest requirement because: (1) The Administration Trust, far from being the only beneficiary of decedent's estate, is not even a beneficiary; (2) petitioner's recoupment claim will inure to the benefit of all beneficiaries of the Administration Trust, and petitioner hasn't met the burden of showing an identity of interest between the Administration Trust and the estate; (3) the Administration Trust has been and will be reimbursed for part of its payment of decedent's estate taxes by the other parties in interest to whom some portion of the Federal estate tax liability will be apportioned; (4) some of the Administration Trust's beneficiaries aren't beneficiaries of the estate; and (5) the case law supports denying rather than affirming that the requirement is satisfied.

These arguments don't seem to me to have force. Although the Michigan Uniform Estate Tax Apportionment Act provides that, unless the will otherwise provides, death taxes shall be apportioned in proportion to the value of the interest that each person has in the estate, Mich. Comp. Laws sec. 720.12 (1979), it also contains several provisions for equitable apportionment, Mich. Comp. Laws secs. 720.13(b), 720.15(d), 720.16 (1979). The aim of this statute is to ensure an equitable allocation of the burden of the tax among those actually affected by that burden. In re Estate of Roe, 426 N.W.2d 797, 799-800 (Mich. Ct. App. 1988).

I would find that any adjustment through recoupment will solely benefit the Administration Trust (and, through it, its beneficiary subtrusts and their beneficiaries). Even though, because of the reimbursements under probate court order, the Administration Trust has been responsible for only 71.9 percent of the estate tax that has been paid so far, I believe the probate court would apportion any reduction in estate tax arising from allowance of recoupment so that it would inure solely to the benefit of the Administration Trust. The Administration Trust paid all its income tax on the sale of its shares, including the overpaid portion. There is thus an absolute identity of interest. The situation seems to me to be quite analogous to that of Stone v. White, so that any distinction based on the existence of different legal entities would be purely artificial.

I would conclude that the identity-of-interest requirement is satisfied.

5. Statutory Mitigation

Congress in 1938 enacted the mitigation provisions now contained in sections 1311 through 1314 as a supplement to equitable recoupment and other court-created correctives to the injustices resulting from inconsistent treatment of related items for Federal tax purposes. S. Rept. 1567, 75th Cong., 3d Sess. 48 (1938), 1939-1 C.B. (Part 2) 779, 815.[24] If the complicated

---

[24]"The Federal courts in many somewhat similar tax cases
(continued...)

requirements of these provisions are satisfied, then either a taxpayer or the Government (depending on which has suffered from the inconsistency) can obtain redress, regardless of the bar of a statute of limitations. If the result of the required adjustment is a tax deficiency, then it will be assessed and collected in the same way as any other deficiency. If the result is a tax overpayment, then the taxpayer must file a claim for refund, unless the Government refunds it without the filing of a formal claim. If the claim is denied or is not acted on in 6 months, the taxpayer may then sue for a refund. Secs. 6532(a)(1), 7422(a).

The Administration Trust here applied for an income tax refund, which was denied. Thereafter, petitioner in this case raised mitigation as one of the affirmative defenses in its amended petition, treating respondent's denial of its refund claim as the final determination that would bring the mitigation provisions into play. Respondent did not move to strike this defense. Nevertheless, because petitioner failed to argue

---

²⁴(...continued)
have sought to prevent inequitable results by applying principles variously designated as estoppel, quasi estoppel, recoupment, and set-off. For various reasons, mostly technical, these judicial efforts can not extend to all problems of this type. Legislation has long been needed to supplement the equitable principles applied by the courts and to check the growing volume of litigation by taking the profit out of inconsistency, whether exhibited by taxpayers or revenue officials and whether fortuitous or by design." S. Rept. 1567, 75th Cong., 3d Sess. 48 (1938), 1939-1 C.B. (Part 2) 779, 815; emphasis added.

mitigation further at trial or on brief, I would deem petitioner to have waived this defense, insofar as its ability to assert it in this proceeding is concerned.

That might not be the end of the matter. The mitigation provisions may have a preemptive effect on petitioner's right to equitable recoupment. Compare, e.g., Brigham v. United States, 200 Ct. Cl. 68, 470 F.2d 571, 577 (1972) with First Natl. Bank of Omaha v. United States, 565 F.2d 507, 512, 518 (8th Cir. 1977). However, respondent has not argued that equitable recoupment is unavailable to petitioner because mitigation preempts it, nor did petitioner argue that there is no preemption. Under the circumstances, I would hold that respondent has waived the preemption argument.[25] Consequently, the mitigation provisions

---

[25]In light of the regulation stating that statutory mitigation is only available for inconsistencies involving solely the income tax, sec. 1311(a)-2(b), Income Tax Regs., and Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), which requires us to defer to that regulation if it is reasonable, see Reno v. Koray, 515 U.S. ___, ___, 115 S. Ct. 2021, 2023 (1995) (Chevron deference owed to interpretive rules), it would be unnecessary to decide whether, in the absence of the regulation and Chevron, Chertkof v. United States, 676 F.2d 984, 987-992 (4th Cir. 1992), was correct in holding that statutory mitigation is also available to correct inconsistencies in application of estate tax and income tax. The weight of authority is to the contrary, see Hall v. United States, 975 F.2d 722 (10th Cir. 1992) (windfall profits tax); Ketteman Trust v. Commissioner, 86 T.C. 91, 110 (1986) (gift tax); Provident Natl. Bank v. United States, 507 F. Supp. 1197 (E.D. Pa. 1981) (estate tax); see also, Willis, Correction of Errors Via Mitigation and Equitable Recoupment: Some People Still Do Not Understand, 52 Tax Notes 1421 (Sept. 16, 1991); Willis, Some Limits of Equitable Recoupment, Tax Mitigation, and Res Judicata: Some Reflections Prompted by Chertkof v. United States, 38 Tax Law. 625 (1985).

do not prevent the application of equitable recoupment in this case.

6.  Other Equitable Considerations

Respondent raised arguments that application of equitable recoupment to petitioner was blocked by other considerations: (1) Lack of clean hands, largely because of considerations having to do with trial tactics that are essentially irrelevant; and (2) lack of diligence or laches, because the Administration Trust had more than 4 months following issuance of the estate tax statutory notice in which it could have filed a timely protective claim for an income tax refund.  On brief, however, respondent has essentially conceded these issues and admitted that, where the proper circumstances for the application of equitable recoupment are present, such equitable considerations won't prevent its application.  All that remains in respondent's briefs of the original arguments about other equitable factors are trace references to their factual bases and what appears to be an argument in the alternative:  "if the Court believes that other factors should be taken into account," then respondent suggests we take into account the Administration Trust's lack of diligence and failure to provide some necessary information during discovery and at and after trial.

Petitioner argues in detail against respondent's specific charges, but only after initially arguing that respondent's concession that such equitable considerations shouldn't be taken

into account in determining the availability of recoupment moots the specifics of respondent's charges. Because I would agree with petitioner that respondent's concession settles the issue, it's unnecessary to address respondent's charges.[26] I would therefore decide that neither of these considerations prevents the application of equitable recoupment in petitioner's favor.

7. Overpayment Status

Petitioner's overpayment status is attributable to two functionally unrelated factors: respondent's uncontested allowance of credit for tax on prior transfers under section 2013, and our redetermination of the value of the shares in an amount which, although greater than the value reported on the estate tax return, is substantially less than the value determined in respondent's statutory notice.

If petitioner had filed the estate tax return claiming the previously taxed property credit to which it is clearly entitled,

---

[26]There is substantial authority that equitable factors can't block equitable recoupment, Bull v. United States, 295 U.S. 247 (1935); Fisher v. United States, 80 F.3d 1576, 1581 (Fed. Cir. 1996); Lovett v. United States, 81 F.3d 143, 145 (Fed. Cir. 1996); United States v. Bowcut, 287 F.2d at 656-657; Dysart v. United States, 169 Ct. Cl. 276, 340 F.2d 624, 628-630 (1965); Holzer v. United States, 250 F. Supp. 875, 878 (E.D. Wis. 1966), affd. per curiam 367 F.2d 822 (7th Cir. 1966); see also McConnell, The Doctrine of Recoupment in Federal Taxation, 28 Va. L. Rev. 577, 579 (1942) (recoupment not entirely equitable in origin or nature). But see Fairley v. United States, 901 F.2d 691, 694 n.4 (8th Cir. 1990); Wilmington Trust Co. v. United States, 610 F.2d at 714-715; Davis v. United States, 40 AFTR 2d 77-6189, at 77-6192, 77-1 USTC par. 13,195, at 87,274 (N.D. Tex. 1977); Minskoff v. United States, 349 F. Supp. at 1150.

we wouldn't even be discussing this issue. Petitioner would have paid estate tax in an amount that was $1,152,649 less than the amount that accompanied the return as prepared and filed, and respondent would have determined an estate tax deficiency in excess of $3 million rather than the one slightly less than $2 million in the statutory notice that was actually sent.[27] As a result of our valuation redetermination of the value of the shares at $1,700 per share in Mueller I, there would be an estate tax deficiency of $957,099, against which there would be recoupment of $265,999, resulting in a reduced deficiency on the order of $691,100.

Petitioner hasn't attempted to explain why it failed to claim the previously taxed property credit on the estate tax return, but whether petitioner has a valid excuse should have no bearing on the outcome. As indicated supra p. 68, laches and lack of diligence don't adversely affect a taxpayer's right to recoupment. For purposes of recoupment, petitioner shouldn't be disadvantaged by its initial oversight in failing to claim a credit that respondent acknowledges petitioner's clearly entitled to. To allow respondent to take advantage of petitioner's oversight would perpetuate in another guise the unjust enrichment that equitable recoupment is designed to prevent.

---

[27]For the purpose of this discussion, changes in other credits can be and are ignored. See background statement, supra pp. 35-36.

i.  Code sections are no obstacle to recoupment

Section 6214(a) grants this Court "jurisdiction to redetermine the correct amount of a deficiency".  Deficiency, as defined in section 6211, depends generally on the relationship between the amount of the tax imposed on the taxpayer and the amount the taxpayer showed as the tax on the tax return.  In Mueller II, when the parties argued the case on the assumption that petitioner would have a deficiency, respondent argued that these sections did not authorize us to use equitable recoupment to adjust petitioner's deficiency.  We decided in Mueller II that, even if petitioner should have a deficiency, we have authority to apply equitable recoupment.  We recently reaffirmed that conclusion in Estate of Bartels v. Commissioner, 106 T.C. 430 (1996).

There is less restriction on our overpayment jurisdiction under section 6512(b).  Although section 6512(b)(1) does require that the overpayment have been made by "the taxpayer", and the Administration Trust is not the same as petitioner, the identity of interest that I would find, and the fact that the Administration Trust has paid and is responsible for the estate tax on transfers of the shares held by and appointed to it, satisfy this requirement, given the nature and purposes of equitable recoupment.

Moreover, the requirements of section 6512(b)(3), which sets time limits on any credit or refund, and whose restrictions

section 6512(b)(1) incorporates, have been satisfied so as to allow the refund of the overpayment in this case. Because the statutory notice in this case was mailed within 3 years of the Administration Trust's overpayments of both income tax and estate tax, section 6512(b)(3)(B) has been satisfied.

ii. Recoupment's defensive nature and the unrelated overpayment don't bar recoupment

Respondent argues and the majority conclude that petitioner's overpayment status prevents us from applying equitable recoupment. They've been beguiled by the notion that allowing equitable recoupment when there's already a net overpayment would increase the overpayment, and that this would be the same as allowing an affirmative recovery of time-barred taxes that recoupment can't provide. As we've said, Mueller II, 101 T.C. at 552, and as United States v. Dalm, 494 U.S. 596 (1990), clearly establishes, a taxpayer asserting equitable recoupment may not affirmatively collect the time-barred overpayment of tax, but may only use equitable recoupment to reduce the Government's timely determination of a deficiency.

Respondent and the majority (majority op. p. 8) cite for their conclusion Brigham v. United States, 200 Ct. Cl. 68, 470 F.2d 571 (1972). There, the taxpayers were seeking refunds of ordinary income tax paid in barred years that, it turned out under a later Supreme Court case, had been erroneously paid, because the underlying transaction should have been treated as an

installment sale resulting in capital gains.  The Commissioner

acquiesced and allowed the taxpayers a refund for 1962 but not

for earlier, barred years.  The taxpayers then sued for refunds

of their overpayments for those earlier years, under the

alternative theories of mitigation and equitable recoupment.  The

Court of Claims denied mitigation on the ground that the

Commissioner had not actively maintained inconsistent positions.

The Court of Claims then denied equitable recoupment, primarily

because it believed that mitigation, within its area of

applicability, preempts equitable recoupment, but also on the

alternative ground that equitable recoupment can only be used to

reduce the amount of deficiencies recoverable by the Government

in later years, and there were no such deficiencies, just time-

barred earlier years.  Brigham v. United States, 470 F.2d at

577.[28]

Brigham's language might, in isolation, like some language

in Mueller II, 101 T.C. at 552, be extended to support

respondent's view, but petitioner persuasively argues that such

an extension would make no sense.  Under respondent's view, this

---

[28]"When its benefits are sought by the taxpayer, the
function of the doctrine [of equitable recoupment] is to allow
the taxpayer to reduce the amount of a deficiency recoverable by
the Government by the amount of an otherwise barred overpayment
of the taxpayer. * * * Here no such situation exists.  * * *
Rather, the plaintiffs are attempting an extension of the
doctrine of equitable recoupment to the case of a refund of taxes
for an otherwise barred year." Brigham v. United States, 200 Ct.
Cl. 68, 470 F.2d 571, 577 (1972).

Court's jurisdiction to apply equitable recoupment would evaporate if and when it turned out that the petitioner was in an overpayment status, which might well not be known until we were about to enter a decision after a Rule 155 computation in a multi-issue case. To tie the requirement that the assertion of equitable recoupment be defensive to a taxpayer's total position, rather than to the single transaction to which equitable recoupment would attach, would be a radical departure from the history of recoupment. Recoupment arose as an equitable rule of joinder that permitted adjudication in one suit of two claims, both arising out of the same transaction, that otherwise had to be brought separately under the common law forms of action. In re Davidovich, 901 F.2d 1533, 1537 (10th Cir. 1990). Hence, when recoupment was imported into the tax law by the Supreme Court in Bull v. United States, 295 U.S. 247 (1935), the Court did require that both claims arise out of the same transaction and that the recoupment claim be defensive, but it did not require that the taxpayer have a deficiency. Bull v. United States, 295 U.S. at 262. Indeed, the Court could not have done so; in Bull v. United States, supra, as in all later refund cases where taxpayers obtained equitable recoupment, the taxpayers had overpaid. The fact that the amount that they claimed in recoupment did not exceed the amount claimed by the Government from the same transaction sufficed to render their claim defensive. The language in Brigham v. United States, supra, on which respondent

relies means no more than that equitable recoupment is only available against a deficiency determined by respondent, whether or not it turns out to exceed any recoupment sought.[29]

The foundations, such as they are, of the majority opinion lie in its footnotes 13 and 14. Footnote 13 provides the majority's rationale for refusing to decide whether petitioner is in a deficiency posture and thus to refuse to apply recoupment before taking into account the credit for tax on prior transfers. Footnote 14 asserts a policy reason for this refusal.

The cases cited in footnote 13[30] can be made to stand for the proposition that, for purposes of res judicata with respect to whether a taxpayer in a new action can raise new tax issues

---

[29]In any event, the language of Brigham v. United States, supra, on which respondent rely is dictum. The taxpayers in the cases consolidated in Brigham were seeking to use equitable recoupment (as well as mitigation) to recover time-barred income tax overpaid. The Court of Claims, having denied mitigation, went on to deny equitable recoupment, first on the ground that mitigation preempted equitable recoupment within its area of applicability. It then went on to observe that the taxpayers were not seeking to reduce deficiencies in later years, which it was conceded did not exist, but rather to extend equitable recoupment to a refund of taxes in an otherwise barred year. There was no independent basis for jurisdiction. The language is best taken as a somewhat less clear expression of the doctrine expressed much more clearly in United States v. Dalm, supra. The same is true of similar language in Evans Trust v. United States, 199, Ct. Cl. 98, 462 F.2d 521, 526 (1972), quoted by the majority (majority op. p. 16), which is to be properly interpreted in the same way as the language of Brigham.

[30]Commissioner v. Sunnen, 333 U.S. 591, 598 (1948); Finley v. United States, 612 F.2d 166, 170 (5th Cir. 1980); Estate of Hunt v. United States, 309 F.2d 146, 148 (5th Cir. 1962); Huddleston v. Commissioner, 100 T.C. 17, 25 (1993).

with respect to a tax year or estate concerning which there has already been a final court decision, all issues having to do with the same tax, the same taxpayer, and the same tax year (or same estate) are part of one undivided claim.  However, the fact that two issues are part of the same claim or cause of action for one purpose doesn't mean they must be deemed to be such for any and all other purposes.  Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363 (7th Cir. 1990).

The language in Commissioner v. Sunnen, 333 U.S. 591, 598 (1948),[31] appears to imply more than the other cases cited in footnote 13.  However, this language is pure dictum: the Supreme Court in Sunnen was denying that res judicata blocked Government litigation of the same tax issue that had been previously decided for earlier tax years, not asserting a res judicata effect with respect to the same year.  The holding of Sunnen was significantly limited in Montana v. United States, 440 U.S. 147, 161 (1979).[32]  Sunnen now only stands for the proposition that

_____

[31]"Income taxes are levied on an annual basis.  Each year is the origin of a new liability and of a separate cause of action. Thus, if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year."  [Commissioner v. Sunnen, 333 U.S. 591, 598 (1948).]

[32]The issue in Montana v. United States, 440 U.S. 147, 161 (1979), was whether a Government contractor, which had filed suit at the direction of the United States in Montana courts against the constitutionality of a Montana tax, had lost his case in the Montana Supreme Court, and then abandoned its appeal to
(continued...)

res judicata doesn't prevent the Government from litigating the same tax issue for different years if the law has changed since the prior lawsuit.  Cf. Greene v. United States, 79 F.3d 1348, 1352 (2d Cir. 1996); Kamilche Co. v. United States, 53 F.3d 1059, 1061 n.2 (9th Cir. 1995); ITT Corp. v. United States, 963 F.2d 561, 564 (2d Cir. 1992); Blair v. Taxation Div. Director, 9 N.J. Tax 345, 352-353 & n.7 (N.J. Tax Ct. 1987), affd. 543 A.2d 99 (N.J. Super. Ct. 1988).  Since the Supreme Court spoke its dictum about the annual nature of the income tax in aid of its conclusion that res judicata didn't prevent new litigation of the same issue for later years, query how much of that dictum the Supreme Court would repeat today, in view of its change of view on that conclusion (different year no longer implies different claim or cause of action).

This Court decided, in Hemmings v. Commissioner, 104 T.C. 221 (1995), that a final judgment in District Court in a refund suit didn't prevent respondent from issuing a statutory notice for the same year on a different issue and this Court from

---

[32](...continued)
the United States Supreme Court, was prevented by res judicata from filing a new suit, again at the direction of the United States and now in United States District Court, against the constitutionality of the same tax, with respect to different payments under it.  As Commissioner v. Sunnen, supra, had previously been interpreted, res judicata would not have prevented suit.  However, in Montana v. United States, the United States Supreme Court emphasized other language in Commissioner v. Sunnen, supra, about how the law had changed since the previous decision in deciding that res judicata prevented this new suit.

refusing to grant partial summary judgment to the taxpayers on the basis of res judicata. Although it's settled law that the requirements for claim preclusion are: (1) identical parties (met); (2) court of competent jurisdiction (presumably met); (3) final judgment on merits (met); and (4) identical cause of action, United States v. Shanbaum, 10 F.3d 305 (5th Cir. 1994), we decided in Hemmings that the Government was only prevented from litigating in a new suit after a concluded refund suit all its compulsory counterclaims and such permissive counterclaims as are actually litigated. Hemmings v. Commissioner, 104 T.C. at 234. What this means is that this Court has held that it's not always and for all purposes that all tax issues having to do with the same taxpayer and the same tax year are parts of one indivisible claim or cause of action.

In Hemmings v. Commissioner, 104 T.C. at 234-235, we cited a number of cases holding or stating that unrelated tax claims by the Government having to do with the same tax year or same estate are not compulsory counterclaims in a refund suit by the taxpayer in District Court. See, e.g., Gustin v. IRS, 876 F.2d 485, 490 n.1 (5th Cir. 1989) (wrong to dismiss for lack of jurisdiction Government's counterclaim in refund suit, because that counterclaim is not compulsory); Caleshu v. United States, 570 F.2d 711, 713-714 (8th Cir. 1978) (pending refund suit in District Court does not prevent collection action to reduce unpaid assessments to judgment in different District Court);

Pfeiffer Co. v. United States, 518 F.2d 124, 128-130 (8th Cir. 1975) (pending refund suit in District Court does not render statutory notice and resulting deficiency assessment invalid); Bar L Ranch v. Phinney, 400 F.2d 90, 92 (5th Cir. 1968) (pending refund suit in District Court does not render statutory notice and resulting deficiency assessment invalid); Florida v. United States, 285 F.2d 596, 602-604 (8th Cir. 1960) (pending refund suits in District Court do not prevent Government action in different District Court to enforce payment of taxes). Most of these cases cite dictum to the same effect in Flora v. United States, 362 U.S. 145, 166 (1960).[33] If these counterclaims are not compulsory and thus can be the basis of a separate action, tax cases can be split, at least for some purposes.

---

[33]"Moreover, if [the taxpayer] decides to remain in the District Court, the Government may--but seemingly is not required to--bring a counterclaim; and if it does, the taxpayer has the burden of proof." [Flora v. United States, 362 U.S. 145, 166 (1960); fn. ref. omitted.]

With respect to Flora v. United States, supra, it's interesting to observe that that case's central holding, that refund suits can only be brought when taxes have been paid in full, was, like Rothensies v. Electric Storage Battery Co., 329 U.S. 296 (1946), largely motivated by the desire not to divert large numbers of tax cases from this Court to the district courts. Flora v. United States, 362 U.S. at 175-176. After United States v. Dalm, supra, and Mueller II, we won't divert tax cases to the district courts if we refrain from holding that the credit for prior taxes is part of the same claim or cause of action for the purpose of permitting equitable recoupment any more than we'll divert them by refusing to allow a narrow reading of the single-transaction issue (the issue in Rothensies v. Electric Storage Battery Co., supra) to block equitable recoupment. See infra pp. 42-60 discussing the single-transaction issue.

Our issue here, whether the credit for prior taxes is part of the same claim for the issue of blocking equitable recoupment, is clearly less closely related to the issue of Finley v. United States, 612 F.2d 166 (5th Cir. 1980), and Estate of Hunt v. United States, 309 F.2d 146 (5th Cir. 1962) (whether the new issue is part of the same claim for the purpose of preventing the plaintiff taxpayer from separately litigating the new issue) than the issue of Hemmings v. Commissioner, supra (whether the new issue is part of the same claim for the purpose of preventing the defendant Government from separately raising the new issue through a statutory notice and then continuing to litigate it in the Tax Court). Hemmings v. Commissioner, supra, being closer to our case, furnishes ground for confining recoupment to the same transaction and not impeding it with the overpayment arising from allowance of the credit for taxes on prior transfers, a completely unrelated issue.

The language of Bull v. United States, supra, quoted by the majority suggests that for our equitable recoupment issue we should look to Hemmings v. Commissioner, supra, not to Finley and Hunt: Defenses that the taxpayer could have asserted if the Government had brought suit for the tax are to be allowed taxpayers in suits that they bring. Bull v. United States, 295 U.S. at 263. If the United States had sued petitioner in this case for the estate tax deficiency, the estate wouldn't have had to raise the credit for prior taxes as a defense or counterclaim.

Since it doesn't spring from the same transaction as the estate tax claim, it wouldn't have had to be raised as a compulsory counterclaim. Fed. R. Civ. P. 13. Thus, petitioner could have raised recoupment as a defense in such a suit and, in the absence of any claims about the credit, would have been entitled to recoupment. Thereafter, the estate could have brought a separate suit for the credit for prior taxes. It's highly significant that this is the test that was applied in Hemmings: The Government's claim was allowed in the second action because in the first action the claim would have been a permissive, not a compulsory, counterclaim. Hemmings v. Commissioner, 104 T.C. at 232, 234-235.[34]

I conclude, for the purposes of applying equitable recoupment, that the cases cited in the majority's footnote 13 are inapposite and that the credit for previously paid taxes is not part of the same claim or cause of action as that attributable to the date of death value of the shares.

The majority's footnote 14 quotes at length a passage in Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 301

---

[34]The majority posits a different hypothetical case (majority op. pp. 11-12) in which the credit for prior death taxes is known and figures as an issue. But it assumes that a court would take that credit into account when deciding whether equitable recoupment is being used defensively and should therefore be allowed. In so assuming, the majority begs the question. There's no case law on point, and we can't be certain what such a court would decide. We're therefore free to decide which is the preferable rule, both for this hypothetical and for the case at hand (the issue is the same for both).

(1946), that emphasizes the importance and desirability of maintaining a statute of limitations in the income tax area. As I've already observed, supra pp. 49, 58-59, the purposes underlying statutes of limitations--preventing stale litigation and protecting repose--don't apply when the timely claim that initiates a lawsuit is subjected to an otherwise time-barred defensive claim that arose out of the same transaction, item, or event. Indeed, those purposes are repugnant to disallowance of such a defense, since such a limitation would encourage delay in the bringing of some claims until a defense is time-barred. United States v. Western Pac. R.R., 352 U.S. 59, 72 (1956).

In any event, Rothensies v. Electric Storage Battery Co. (like Ford v. United States, 149 Ct. Cl. 558, 276 F.2d 17 (1960), which the majority also cites and quotes in this connection, majority op. p. 15), stands not just for limiting equitable recoupment, but for limiting it through a narrow interpretation of the single-transaction requirement.[35] To limit equitable recoupment in the way that those two cases do is more defensible than to limit it in the way that the majority does here. There's a connection between the defensive purpose of equitable recoupment and the single-transaction requirement.

Recoupment is allowed to circumvent such bars as statutes of limitations, sovereign immunity, and bankruptcy because it would

[35]The two cases are discussed at length, supra pp. 42-44, 47-52, in the section on the single-transaction requirement.

be unjust to allow one party to benefit from some aspects of a transaction when another party can't derive the benefits of other aspects of that same transaction merely because of the presence of some procedural bar.  Reiter v. Cooper, 507 U.S. 258, 265 n.2 (1993); Rothensies v. Electric Storage Battery Co., 329 U.S. at 299; In re Peterson Distrib., Inc., 82 F.3d 956, 961 (10th Cir. 1996); In re B & L Oil Co., 782 F.2d 155, 159 (10th Cir. 1986) (cited approvingly for extent to which recoupment is available in bankruptcy in Reiter v. Cooper, 507 U.S. at 265 n.2 ); In re Centergas, Inc., 172 Bankr. 844, 849 (Bankr. N.D. Tex. 1994).  To the extent that the object of inconsistent taxation was not a part of the same transaction, to that extent justice requires less insistently that it be treated consistently, and this is what explains the single-transaction requirement.  There is no such connection between the rationale of equitable recoupment and the majority's expansive interpretation of the requirement that recoupment be defensive.  Rather, the majority's reasoning prevents justice from being rendered in view of the one transaction as a whole and thereby thwarts the purpose of equitable recoupment, not only in this case but probably in future cases where such a result would be even more clearly unjust.

iii. <u>Barring recoupment would be inconsistent with tax precedent</u>

Respondent and the majority would now have us believe that in tax cases <u>Bull v. United States</u>, <u>supra</u>, only eliminates to a very limited extent the requirement that equitable recoupment be defensive. Of course, under <u>Bull v. United States</u>, <u>supra</u>, and later recoupment tax cases, a taxpayer can't gain any greater credit from the Government under equitable recoupment than the Government seeks from him (just as the Government can't gain any greater credit than the taxpayer seeks from the Government). But the majority and I part company on their conclusion that equitable recoupment in favor of the taxpayer is further limited in that it can't, in combination with any other unrelated claims of the taxpayer, lead to any affirmative recovery by the taxpayer. <u>Bull v. United States</u>, <u>supra</u>, by allowing recoupment where the recouping party was technically the plaintiff, liberalized the requirement that recoupment could only be used defensively. It did so to prevent unjust enrichment of the Government. For the Government to retain both the estate tax and the income tax on the same fund was held to amount in law to a fraud on the taxpayer's rights and to be against morality and conscience. In limiting <u>Bull v. United States</u>, <u>supra</u>, as the majority have done, they are thereby perpetuating unjust enrichment in the case at hand.

The question is really one of the order of application:  If we consider the adjustment that would result from recoupment as occurring before the allowance of credit for tax on prior transfers, then that adjustment doesn't cause affirmative recovery, which would only result later; rather, it merely cancels, in part, the Government's claim arising from the same transaction, item, or event.  Only if we consider the adjustment from recoupment as occurring after the allowance of the credit for tax on prior transfers would it cause affirmative recovery. We aren't obliged to take that view of it, and the policy considerations argue strongly against so taking it.

So long as petitioner is entitled to some unrelated credit, however small, there would, under respondent's reasoning, be some redetermined increased valuation of the shares at which petitioner would cease to be entitled to any more than partial recoupment, and another, lower but still increased, valuation at which petitioner would cease to be entitled to any recoupment at all.  The same would be true of any refund actions that might have occurred if the estate had paid the deficiency determined by respondent and then sued for a refund.  Under respondent's and the majority's approach, any limitation on recoupment might only become clear upon final disposition of a multi-issue case.  And this limitation on equitable recoupment would result from the

altogether fortuitous existence of some unrelated credit or other adjustments, in this case the credit for tax on prior transfers.

Let me take another cut at what it means to say that the defense of equitable recoupment can't be used offensively, like a counterclaim, to generate an overpayment. Suppose we didn't have the previously taxed property credit problem. Suppose also that the estate had reported the value of the shares at $1,500 per share and there was no estate tax audit and the period of limitations expired on the assessment of an estate tax deficiency and the filing of an estate tax claim for refund. The Administration Trust, which reported its gain on the sale of the shares using the date-of-death value basis of $1,500 per share, then files an income tax claim for refund just before the period of limitations expires, contending that it should have used a basis of $1,700 per share, and sues for the refund. The Government answers with a denial, but also asserts equitable recoupment. The District Court upholds the $1,700 date-of-death value, which means that the estate is entitled to an income tax refund of approximately $266,000. The Government says that means there is a time-barred deficiency in estate tax of approximately $957,000. Allowing recoupment means that the $266,000 refund claim is wiped out, but the statute of limitations bars the Government from collecting the balance of the estate tax deficiency of $691,000.

If we were to allow an increase in the overpayment in our case, we would not breach the bar of the statute of limitations in the way the District Court would be doing if it allowed the Government to recover the balance of the deficiency in my hypothetical. The Government is already indebted to the taxpayer in our case for the amount of the unclaimed previously taxed property credit of more than $1 million ($1,152,649), and, because the Government has conceded that amount in the statutory notice, there's no statutory bar on the taxpayer's recovering it as an overpayment in this case.

If this Court had upheld in full the estate's reporting position on the value of the shares at $1,505 per share, we would have jurisdiction to determine an overpayment in the full amount of $1,152,649, and to enter a decision in favor of the taxpayer in that amount. There is and would be no statute of limitations bar to our determining an overpayment in that full amount. All I'm proposing that we do now is reduce the smaller deficiency that arises from valuing the shares at $1,700 per share by the amount of the recoupment in order to compute the amount of the reduction of the overpayment that the taxpayer is already otherwise entitled to, and that's already in the picture as part of this case. To do so would not impair the sovereign immunity bar of the statute of limitations.

Nothing in Bull v. United States, supra, indicates that we need consider anything other than the single transaction at issue when we set out to determine whether recoupment is being used defensively, and there is plenty of other authority to the effect that we should only consider that single transaction. As the Supreme Court said in Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299 (1946):

> Equitable recoupment has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

That sentence was cited at a critical point in United States v. Dalm, 494 U.S. at 611, to support the Supreme Court's central holding that equitable recoupment requires an independent basis for jurisdiction. By limiting recoupment as respondent wants, the majority, to that extent, are failing to do justice in view of the one transaction as a whole.

    iv.  Barring recoupment would be inconsistent with other precedent

In Reiter v. Cooper, 507 U.S. 258, 265 (1993), a bankruptcy case and the Supreme Court's latest pronouncement on recoupment, the Supreme Court reaffirmed Bull v. United States, 295 U.S. 247 (1935),[36] and cited it for the proposition that recoupment claims

_____

[36]Equitable recoupment entered bankruptcy law under the
(continued...)

are not barred by statutes of limitations so long as the main action is timely, and said that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, "at least to the extent that the defendant merely seeks recoupment."  Reiter v. Cooper, 507 U.S. 258, 113 S. Ct. at 1218 & n.2.  The Supreme Court went on to say that this did not result in preferential treatment of the creditor asserting recoupment, inasmuch as recoupment merely permits a determination of the just and proper liability on the main issue. Id. at 1218-1219 n.2.  To take account of anything other than the same transaction in determining the amount of recoupment would be inconsistent with this argument, and indeed the Supreme Court made absolutely no mention of a further, unrelated amount owing to the plaintiff-debtor.[37]

---

[36](...continued)
authority of Bull v. United States, 295 U.S. 247 (1935).  In re Monongahela Rye Liquors, Inc., 141 F.2d 864, 869 (3d Cir. 1944). As in the tax area, recoupment is used in bankruptcy cases to prevent unjust enrichment.  A debtor should not benefit from post-petition sales to a creditor under a contract without the burden of repaying the creditor's pre-petition overpayments under the same contract.  In re Peterson Distrib., Inc., 82 F.3d 956, 961 (10th Cir. 1996); In re B & L Oil Co., 782 F.2d 155, 159 (10th Cir. 1986) (cited with approval for extent to which recoupment is available in bankruptcy in Reiter v. Cooper, 507 U.S. 258, 265 n.2 (1993)).  The prevention of unjust enrichment thought of in these terms is the real reason for the single-transaction requirement, both in bankruptcy, where it is also enforced, and in the tax area.

[37]This additional amount is disclosed in the opinion of the
(continued...)

In Reiter v. Cooper, supra, the unrelated claim was properly ignored by the Supreme Court, because it couldn't have affected the outcome. In In re Greenstreet, Inc., 209 F.2d 660 (7th Cir. 1954), a claim that the Court of Appeals for the Seventh Circuit chose to regard as unrelated was very much before the Court, which refused to allow that claim to have any effect on the amount of recoupment allowed. Instead, the claim belonging to the same transaction to which the recoupment counterclaim also belonged alone determined the extent to which recoupment was allowed. That is to say, only the single transaction was considered.

In In re Greenstreet, Inc., supra, the Government filed claim, in the bankruptcy proceedings of a manufacturer of Army clothing, for $302,500, the purchase price of property that it had furnished to the debtor for the manufacture of such clothing, and for an additional $68,279.72 damages for the bankrupt's failure to complete the contract. The bankruptcy trustee in turn filed counterclaims amounting to $155,593.49, asserting certain liens and unsecured money demands against the property and the Government's general claim. The District Court held that it had

_____

[37](...continued)
Bankruptcy Court in this case. In re Carolina Motor Express, 84 Bankr. 979, 981, 991 (Bankr. W.D.N.C. 1988). The Supreme Court only mentioned the debts owing under the main issue. Reiter v. Cooper, 507 U.S. 258, 113 S. Ct. at 1217.

jurisdiction over all the counterclaims, and the Government appealed this holding.  The parties agreed that the counterclaims could cancel the Government's general claim for damages of $68,279.72.  The issue in dispute was whether the counterclaims could also be asserted against the Government's claim for the reclamation of its property, so that the whole of the counterclaims could have effect.  The Court of Appeals found that they could not be asserted to that extent, since the Government had not waived its sovereign immunity to that extent.  In holding, in effect, that the property claim did not involve the same transaction, the Court of Appeals gave a particularly narrow reading of the single-transaction requirement, especially for a bankruptcy case.  That issue would almost certainly be decided differently today,[38] so that there would be no question of

---

[38]Cf. In re Pullman Constr. Indus., Inc., 142 Bankr. 280 (Bankr. N.D. Ill. 1992) (questioning In re Greenstreet, Inc., 209 F.2d 660 (7th Cir. 1954), on the basis of later Seventh Circuit decisions about the single-transaction issue, making the test for deciding whether sovereign immunity is waived with respect to a counterclaim whether the counterclaim is a compulsory counterclaim to the claim in question, and holding on that basis that sovereign immunity had been waived with respect to the counterclaim), affd. sub nom. United States v. Pullman Constr. Indus., Inc., 153 Bankr. 539 (N.D. Ill. 1993), appeal dismissed sub nom. Pullman Constr. Indus., Inc. v. United States, 23 F.3d 1166 (7th Cir. 1994).  Query whether if there has been such a liberalization of the single-transaction requirement for equitable recoupment in bankruptcy, there should not be a similar liberalization in the tax area, and whether the post-Rothensies v. Electric Storage Battery Co. cases cited in the discussion of the single-transaction requirement do not demonstrate precisely
(continued...)

limiting the recoupment.  However, it is not Greenstreet's treatment of the single-transaction issue that makes it significant for the case at hand.  Rather, In re Greenstreet, Inc. is a striking example of a refusal by a court to look beyond the single transaction in deciding what effect to give to recoupment as a defense.  It is with this in mind that we should look at the language in In re Greenstreet, Inc. quoted by the majority (majority op. p. 6 n.8) against my view of the overpayment issue.  There would have been no affirmative recovery by the debtor if all its counterclaims had been allowed, provided that one looks beyond the single transaction.  After all, the Government's claims in total substantially outweighed the counterclaims.  In saying that there could be no affirmative recovery through recoupment, the Court of Appeals for the Seventh Circuit was clearly thinking of affirmative recovery with respect to the single transaction.

It should further be noted that the Supreme Court in Reiter v. Cooper, supra, said that it basically made no difference whether recoupment was a defense or a counterclaim (according to the Supreme Court, it was in fact a counterclaim in the context of that case, but the defendants' characterization of it as a defense was inconsequential, and the plaintiff's argument that,

---

[38](...continued)
such a development.

since it was a counterclaim, it could not be raised as a defense was denied).  Reiter v. Cooper, 507 U.S. at 263; cf. FDIC v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994) (claims in recoupment are compulsory counterclaims under Fed. R. Civ. P. 13(a)).  This suggests that it is a mistake to insist too much on recoupment's defensive nature in the case at hand.[39]

Faced with the issue of whether recoupment is subject to the limitations on setoff in the Bankruptcy Code, a later bankruptcy court decided, on the basis of Reiter v. Cooper, that recoupment was not so limited.  It said further, by way of distinguishing the two: "recoupment speaks not simply to the net amount due from one party to the other computed by subtracting one claim from the other, but rather to the amount of the plaintiff's claim alone on a particular contract, transaction or event."  In re Izaguirre,

---

[39]In deciding in Reiter v. Cooper, supra, that it made no difference whether the recoupment was considered a counterclaim or defense, the Supreme Court cited 5 Wright & Miller, Federal Practice & Procedure, sec. 1275 (2d ed. 1990), according to which it is not clear whether setoffs and recoupments should be viewed as defenses or counterclaims.  Reiter v. Cooper, 507 U.S. at 263.

In In re Izaguirre, 166 Bankr. 484, 493 (Bankr. N.D. Ga. 1994), a bankruptcy court cited the reference in Reiter v. Cooper to Wright & Miller to conclude:  "Although recoupment may be viewed as an offset to the extent it is viewed as a counterclaim, recoupment has a chameleon-like quality that also permits it to be viewed simply as a defense."

In agreement that Reiter v. Cooper minimizes the importance of the distinction between defenses and counterclaims with respect to recoupment is Consolidated Rail Corp. v. Primary Indus. Corp., 868 F. Supp. 566 (S.D.N.Y. 1994).

166 Bankr. 484, 493 (Bankr. N.D. Ga. 1994). To the same effect, outside bankruptcy, see such cases as United States v. Tsosie, 92 F.3d 1037, ___, (10th Cir. 1996) (Indian land case); FDIC v. Hulsey, 22 F.3d 1472, 1487-1488 (10th Cir. 1994) (secured loan agreement); Frederick v. United States, 386 F.2d 481, 488 (5th Cir. 1967) (suit on a note); Shipping Corp. of India, Ltd. v. Pan-Am. Seafood, Inc., 583 F. Supp. 1555, 1557 (S.D.N.Y. 1984) (admiralty); United States v. Timber Access Indus. Co., 54 F.R.D. 36 (D. Or. 1971) (logging contract).

United States v. Timber Access Indus. Co., supra, is close to the point but not on all fours with our overpayment issue. The United States, as trustee for an Indian tribe, sued the defendant logger, asserting breaches of a logging contract, for $47,561.06. The defendant counterclaimed under the same contract, alleging that the Government owed it $109,870.85, and argued that, although it could not have full recovery on the counterclaim, it was entitled to a credit of $47,561.06 as recoupment and, beyond that, affirmative recovery of $10,000 under the Tucker Act, 28 U.S.C. sec. 1346(a)(2) (1994)($10,000 being the jurisdictional limit on Tucker Act claims in the District Court[40]). The Government argued that sovereign immunity

---

[40]There is no such monetary limitation on contractual claims against the United States in the Court of Federal Claims, 28 U.S.C. sec. 1491 (1994), and the District Court in United States

(continued...)

barred any affirmative recovery by the defendant.  The District Court agreed with the defendant and allowed an affirmative recovery to the extent of $10,000.  However, it denied other, permissive counterclaims sought to be brought by the logger's surety, but only on the ground that these counterclaims were brought against the United States not in its capacity as trustee for the Indian tribes, but in its own capacity, so that they were unauthorized under Fed. R. Civ. P. 13, because sovereign immunity operated with respect to these other counterclaims.

The fact that no statute-of-limitations problem figures in United States v. Timber Access Indus. Co., supra, does not distinguish it from our case:  There, the doctrine of recoupment was needed to support the defendant's main counterclaim against the Government's claim of sovereign immunity, whereas in our case recoupment is needed to support petitioner's defense against the bar of the statute of limitations.  The fact that the defendant in United States v. Timber Access Indus. Co., supra, could still, after the decision in the case, bring suit in the Court of Claims for the balance of its counterclaim means that to limit

---

[40](...continued)
v. Timber Access Indus. Co., 54 F.R.D. 36 (D. Or. 1971), left open the possibility that the defendant logger could recover the balance of its counterclaim in the Court of Claims (as it was then called), 54 F.R.D. at 38-39.  The District Court held that allowing the $10,000 recovery in the District Court would not be the prohibited splitting of the cause of action.

recoupment there didn't eliminate all opportunity for the defendant to obtain complete justice with respect to the transaction in issue, whereas barring recoupment in our case would amount to denying complete justice. To allow an affirmative recovery arising from the same transaction to bar or limit recoupment (as the District Court in United States v. Timber Access Indus. Co., supra, refused to do) does less violence to the idea of doing complete justice with respect to the one transaction than would allowing an unrelated affirmative recovery (like that in our case with respect to the previously taxed property credit) to have such a limiting effect. Thus, there was more reason in United States v. Timber Access Indus. Co., supra, than there is in our case to limit recoupment by the amount of the affirmative recovery, and nevertheless the District Court didn't do so. United States v. Timber Access Indus. Co., supra, which is cited and discussed at some length in 6 Wright et al., Federal Practice & Procedure, sec. 1427, at 197-198 n.8 (2d ed. 1990), illustrates the point that another affirmative recovery with its own independent jurisdictional basis, even when it arises from the same transaction from which a recoupment defense or counterclaim arises, does not bar or limit recoupment.

It is appropriate to use these non-tax cases, and most especially Reiter v. Cooper, in the tax area. Reiter v. Cooper not only cited Bull v. United States at a crucial point in its

argument, 507 U.S. at 265.  It also used several recoupment cases outside both bankruptcy and tax to support the proposition that there is a "general principle of recoupment", which has force in the absence of explicit Congressional prohibition, id.; cf. United States v. Dewey Freight Sys., Inc., 31 F.3d 620, 623 (8th Cir. 1994).  Standard jurisdictional principles typically operate in the same fashion in tax as in all other areas of the law. United States v. Forma, 42 F.3d at 766 (citing United States v. Dalm, 494 U.S. at 608-611).

So long as the recoupment claim is only allowed to offset the Government's claim from the transaction in issue, and not to exceed any amount determined to be owing to the Government that also arises from that transaction, all sensible requirements are met.  The statement of the Court of Appeals for the Second Circuit in a tax case that, despite sovereign immunity, a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim, United States v. Forma, 42 F.3d at 764 (citing United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 511 (1940)), supports my view.[41]

---

[41]United States v. Forma, 42 F.3d 759, 767-768 & n. 11 (2d Cir. 1994), did not involve equitable recoupment, although that doctrine is discussed briefly.  Rather, it involved an unrelated time-barred counterclaim by taxpayers in a suit where the United States originally sought to reduce tax assessments relating to
(continued...)

## Conclusion

In sum, in the circumstances of this case, equitable recoupment properly would only be allowed as an offset against (and only up to the amount of) the deficiency as we would have redetermined it in the absence of the previously taxed property credit. The previously unclaimed credit that respondent allowed has no bearing on the issue arising out of the date-of-death valuation of the shares, and should also be paid to petitioner. Thus, petitioner should be paid in the end the amount

$$a = c - (d - r)$$

$$(d \geq r),$$

where a is the amount of the overpayment to be paid, c is the credit for the tax on prior transfers that respondent allowed in the statutory notice, d is the deficiency as we would have redetermined it if the credit had been claimed on the estate tax return or paid administratively, and r is the offset to that

---

[41](...continued)
the same years to judgment and then voluntarily agreed to the dismissal of its claims. The Court of Appeals held that there was no basis for jurisdiction over the counterclaim and therefore remanded the case to the District Court with a direction to dismiss the counterclaim. In the discussion of equitable recoupment, which the parties agreed was not available to the taxpayers in the case, there is mention that the single-transaction requirement was not satisfied. There is, however, no mention of any no-affirmative-recovery requirement, in the discussion of either equitable recoupment or the counterclaims.

deficiency resulting from our application of equitable recoupment, which can't exceed the amount of that deficiency.

I would find that respondent's overpayment argument doesn't prevent the application of equitable recoupment. This would allow us to consider all the other issues, on which I would also find in favor of petitioner. Consequently, I would apply equitable recoupment in favor of petitioner.